# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-00069-SCT

*WILLARD RANDALL MARQUIS a/k/a RANDY
MARQUIS a/k/a WILLARD R. MARQUIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/2016 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| TRIAL COURT ATTORNEYS: | JAMIE MARIE BANKS |
| | ALISON LESLIE FLINT |
| | RAYMOND L. WONG |
| | BOYD P. ATKINSON |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KATY GERBER |
| | LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/10/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHAMBERLIN AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     Willard Marquis was convicted for the sexual battery of J.D.,[1] a female minor under

the age of fourteen.  In a pretrial competency hearing, J.D., who was seven at the time, was

found to be competent to testify.  And a day later, J.D. testified at trial through closed-circuit

---

[1] Because J.D. was a minor at the time, initials will be used to protect her anonymity.

TV.  During the trial, a recording of a forensic interview of J.D. was played before the jury.  Also played before the jury was a recording from J.D.'s mother's cell phone in which J.D. told her mother of the alleged sexual abuse.   At the end of the trial, the jury found Marquis guilty.

¶2.    Marquis appeals his conviction for three reasons.  First, Marquis claims that J.D. was not competent to testify.  Second, Marquis argues that the State's use of a recorded forensic interview of J.D. violated his constitutional right to confront the witnesses against him.  And finally, Marquis claims that the State's use of the recorded conversation between J.D. and her mother, along with the recording of the forensic interview, was cumulative evidence which amounted to improper bolstering.

¶3.    Having reviewed the record, we disagree and affirm Marquis's conviction.

## FACTS AND PROCEDURAL HISTORY

¶4.    One evening while getting a bath from her mother Amy, J.D., just five years old at the time, informed Amy of several instances in which Marquis[2] had sexually abused her.  Upon hearing this, Amy retrieved her cell phone and recorded the rest of J.D.'s claims. Throughout the course of the bath-time conversation with Amy, J.D. claimed that Marquis had touched her—pointing to her vaginal and anal areas.  Later that evening, Amy told J.D.'s father, Steven, of J.D.'s claims.

¶5.    The next day, Steven arrived at the Cleveland Police Department and lodged a

---

[2] Marquis, while not related to J.D. by blood, was married to J.D.'s grandmother.

complaint; Marquis was then arrested for sexual battery. Marquis's indictment alleged that the sexual-battery incidents occurred between August 1, 2012, and December 31, 2013. A copy of Amy's cell-phone recording was given to the police and eventually was played for the jury at trial.

¶6. On September 24, 2014, Rachel Daniels, a social worker for the Children's Safe Center at University of Mississippi Medical Center in Jackson, conducted a forensic interview of J.D. During this interview, J.D. disclosed the details of the alleged sexual abuse. As a result of this interview, Daniels, as an expert in social work and forensic interviewing, concluded that J.D.'s disclosures were consistent with a child who had been sexually abused. This forensic interview was recorded, and it also was played for the jury at trial. Daniels also testified at trial.

¶7. The day before trial, the trial court held a hearing to determine whether J.D. was competent to testify. During the hearing, the judge asked J.D., who was seven years old at the time, a series of questions about her familiarity with courtrooms, judges, and witnesses. In response to the judge's questions, J.D. nodded her head "yes" or shook her head "no." Then the judge asked whether telling the truth was better than telling a lie; J.D. responded, "[t]he truth." The judge asked J.D. if she knew why she was in court. Initially, there was no audible response from J.D., but she then shook her head "no." The judge explained to J.D. that she was there to talk about events that may have happened to her when she was younger. And when asked if she could do that, J.D. nodded her head "yes." This prompted the judge

3

to instruct J.D. to answer the question verbally—yes or no; J.D. said "yes." When asked if she knew that she was supposed to tell the truth, J.D. said "yes."

¶8. The judge then asked J.D. if she knew the definition of a promise. J.D. replied "yes," but struggled to define the word. The judge provided a definition of a promise: "[I]t [is] when you say you [are going to] do something, and you do it." J.D. responded "yes." After J.D. testified that she had never seen anyone take an oath, the judge explained to J.D. that an oath is a promise to tell the truth. The judge then told J.D. that she would have to tell the truth in court; J.D. said "okay."

¶9. At the end of the hearing, the judge found that J.D. understood the questions and the difference between telling the truth and telling a lie. The judge further found that J.D. knew that telling the truth was the right thing to do, and that she seemed to understand "the significance of the oath, to the extent a seven year old could." And so the judge found J.D. competent to testify at trial. In response to the judge's finding that J.D. was competent to testify, defense counsel raised no objection, but stated:

> Your Honor, we know the [c]ourt has made a determination of competency at this . . . time as to [J.D.]. We also make notice to the [c]ourt that most of the questions, she just nodded and, tomorrow . . . she will have to respond. We would also make our – most of our concerns are when I'm asking questions, she doesn't answer. That will not be effective cross-examination if she doesn't answer the question. We just make that known for the record. That's a concern we have because if she doesn't answer, then the [c]ourt is [going to] have to do something else.

¶10. The next day, trial began. During the trial when asked, J.D. was able to demonstrate where Marquis had touched her. She also was able to tell the location where the touching

4

took place—at her grandmother's house, while her grandmother was at work. During the direct examination, J.D. often had to be led by the prosecutor. And in response to some detailed questions, J.D. said she could not remember. During cross-examination, many of J.D.'s responses could not be heard due to her soft speech and noise from the operation of a street sweeper outside the courthouse. Nonetheless, J.D. was able to answer many of defense counsel's questions.

¶11. Maquis testified in his own defense, denying the allegations of sexual battery lodged against him. During the trial, the recorded forensic interview of J.D., as well as the cell-phone recording taken by Amy of her and J.D.'s bath-time conversation, wherein J.D. first told of the alleged sexual abuse, were played before the jury. And after consideration of all the evidence presented at trial, the jury found Marquis guilty of sexual battery. Marquis now appeals to this Court.

## DISCUSSION

### I.    J.D.'s Competence to Testify

¶12. On appeal, Marquis argues that the trial court abused its discretion in finding J.D. competent to testify. As a general matter, "every person is competent to be a witness except as restricted by [Mississippi Code Section] 13-1-7 (competency of spouses) and [Section] 13-1-11 (persons convicted of perjury or subornation of perjury), or by the Mississippi Rules of Evidence." *Sudduth v. State*, 562 So. 2d 67, 70 (Miss. 1990); *see* M.R.E. 601. And this Court has held that the "[c]ompetency of a witness is to be determined by the trial court, in

5

its discretion." *Eakes v. State*, 665 So. 2d 852, 869 (Miss. 1995).

¶13.     In its brief, the State argues that Marquis failed to object to the competency determination and therefore waived this issue.  Indeed, this Court has held that "[i]n order to preserve an issue for appeal, counsel must object.  The failure to object acts as a waiver." *Carr v. State*, 873 So. 2d 991, 1004 (Miss. 2004).

¶14.     Having reviewed the record, we find that Marquis failed to object to the trial court's determination that J.D. was competent to testify, and as a consequence, Marquis failed to preserve the issue for appeal.  For one, the issue was not raised at any point during trial.  In fact, the closest thing to an objection was defense counsel's statement after the trial court's competence determination, when defense counsel stated:

> Your Honor, we know the [c]ourt has made a determination of competency at this . . . time as to [J.D.].  We also make notice to the [c]ourt that most of the questions, she just nodded and, tomorrow . . . she will have to respond.  We would also make our – most of our concerns are when I'm asking questions, she doesn't answer.  That will not be effective cross-examination if she doesn't answer the question.  We just make that known for the record. That's a concern we have because if she doesn't answer, then the [c]ourt is [going to] have to do something else.

The State argues that this statement was not an objection, that it was instead a request from defense counsel that the trial court instruct J.D. to answer the questions at trial and to ensure that she did so verbally.  We agree and find that Marquis is procedurally barred from raising the issue of J.D.'s competence before this Court.  And so we will not reach the merits of the trial court's competence determination itself.

## II.     Confrontation Clause

6

¶15.    Next, Marquis claims that the admission of the forensic interview into evidence violated his right to confrontation.  The Supreme Court of the United States has held that, under the Confrontation Clause of the Sixth Amendment, testimonial hearsay is not admissible unless the defendant had an opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

¶16.    Marquis claims that the forensic interview of J.D. was a testimonial statement, and building on his argument in the previous section, Marquis contends that because J.D. was incompetent to testify, there was no adequate opportunity to cross-examine her, and thus, the introduction of the forensic interview violated his right to confrontation under the Sixth Amendment.  We disagree.

¶17.    As an initial matter, we agree with Marquis that the forensic interview itself was a testimonial statement.  We have had held that "a statement is testimonial when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused." *Hobgood v. State*, 926 So. 2d 847, 852 (Miss. 2006).  Here, the record shows that, after the report of a possible sexual battery was made to the proper authorities, those authorities then "set up a forensic interview to be done."  Indeed, Charles Bingham, Chief of Police of Cleveland, testified that setting up the forensic interview was a "step" in the investigation.  Bingham further explained the purpose of the forensic interview:

> [Y]ou send [the child] to a person that [is] trained [in] talking with children about different types of events that won't ask them leading questions[.]  It [is] just a person who [is] trained to jus[t] elicit facts out of the child, and we set up a forensic interview for that to be done.

7

Eventually, copies of the report and forensic interview were sent to the Cleveland Police Department.

¶18. We find that Bingham's testimony makes clear that the forensic interview, though not conducted by law-enforcement officers themselves, was an investigatory step, done for the purpose of gathering a statement that was testimonial in nature. Indeed, the word "forensic" is defined as "[u]sed in or suitable to courts of law[.]" *Forensic*, Black's Law Dictionary (10th ed. 2014). And so we agree with Marquis's position that the forensic interview is testimonial.

¶19. Having said that, even though we find the recording of the forensic interview testimonial, the admission of the recording did not violate the Confrontation Clause of the Sixth Amendment, because Marquis had the opportunity to, and did, cross-examine J.D. at trial. As to this issue, Marquis seems to take the position that, because J.D. was not competent as a witness, he was denied an opportunity to cross-examine her effectively. But as this opinion already has stated, Marquis waived any issues as to the trial court's finding of competence, and nothing in the record leads us to conclude that the trial judge erred in making this determination. And so we find that Marquis had adequate opportunity for effective cross-examination of J.D.

¶20. As to Marquis's issues with various aspects of the cross-examination of J.D.—such as various inaudible answers from J.D.—we note that "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective

8

in whatever way, and to whatever extent, the defense might wish.'" ***Kentucky v. Stincer***, 482 U.S. 730, 739, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987) (quoting ***Delaware v. Fensterer***, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985)).

¶21.   In sum, we find that the statements made during the forensic interview were testimonial.  And because Marquis was not denied an opportunity to cross-examine J.D. effectively, we also find that Marquis's right to confrontation under the Sixth Amendment was not violated.

### III.    Improper Bolstering

¶22.   Finally, Marquis argues that the trial judge abused his discretion in admitting the audio recordings of J.D.'s statement to her mother and J.D.'s forensic interview into evidence. Specifically, Marquis claims that these recordings amounted to cumulative testimony resulting in improper bolstering.

¶23.   At the outset, we note that Marquis's objection to the forensic interview being admitted into evidence was based on his right to confrontation, not that it was cumulative. And so the State argues, and we agree, that, as to that particular recording, Marquis failed to preserve this issue for appeal.  *See* ***Carr***, 873 So. 2d at 1004.

¶24.   As for the admission of the cell-phone recording, we find that the trial judge did not err.  This Court has held that "[a] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." ***Shaw v. State***, 915 So. 2d

9

442, 445 (Miss. 2005) (quoting *Jefferson v. State*, 818 So. 2d 1099, 1104 (Miss. 2002)).

¶25.     Marquis seems to argue that the admission of the cell-phone recording was a repetition of J.D.'s mother's in-court testimony. This reiteration, Marquis contends, amounted to "piling on." We disagree. First, the recording and the witnesses' testimony were necessary to tell the whole story, as the recording often expanded upon and provided context to the witnesses' testimony. For instance, J.D.'s mother testified that J.D. had told her that Marquis had touched her. And yet on the cell-phone recording, J.D. also said that she had touched Marquis.

¶26.     In the end, in accordance with the great deference afforded to trial judges on the admission of evidence, we find that the admission of the cell-phone recording helped provide context, was necessary to tell a rational and coherent story of the alleged sexual battery, and did not amount to improper bolstering.

## CONCLUSION

¶27.     In conclusion, we affirm Marquis's conviction for the sexual battery of J.D. First, Marquis failed to object to the trial judge's finding that J.D. was competent to testify, and thus, Marquis waived the issue. Second, the admission of the forensic interview of J.D. did not violate the Confrontation Clause of the Sixth Amendment because Marquis had an adequate opportunity to, and did, cross-examine J.D. And finally, the trial court did not err in allowing the admission of the cell-phone recording into evidence.

¶28.     **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**