# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-00275-SCT

*CODY L. PITTS a/k/a CODY LEE PITTS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2018 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| TRIAL COURT ATTORNEYS: | PATRICIA SIMPSON |
| | MITCHELL L. OWEN |
| | LISA COLLUMS |
| | THERESSIA LYONS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/05/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     A Harrison County jury convicted Cody L. Pitts of one count of touching a child for lustful purposes in violation of Mississippi Code Section 97-5-23(1) (Supp. 2019). After the verdict, the Harrison County Circuit Court, First Judicial District, sentenced Pitts to serve ten years, day for day, without the possibility of parole or early release in the custody of the Mississippi Department of Corrections.

¶2.     Pitts now appeals his conviction and sentence.  He alleges two errors.  First, he argues that the trial court abused its discretion by admitting evidence under Mississippi Rule of Evidence 803(25)—the tender-years exception to the rule against hearsay.  Second, Pitts maintains that the trial court abused its discretion by giving jury instruction S-6: an instruction concerning the uncorroborated testimony of a sex-crime victim.

¶3.     After review, we find that the trial court did not abuse its discretion.  Accordingly, we affirm.

**STATEMENT OF FACTS**

¶4.     Billy[1] was born on September 10, 2006.  When Billy was five years old, his mother, Janice, married Pitts—making Pitts Billy's stepfather.  Pitts was born on September 28, 1988. In June 2012, the family moved to Pass Christian, Mississippi, and lived there until November 2012.  While living in Pass Christian, Pitts began to sexually abuse Billy.  This abuse continued as the family moved repeatedly until Janice and Pitts separated in October 2014.[2]

¶5.     In January 2015, Janice noticed behavioral changes in Billy and suspected that Billy was having issues at school.  When Janice asked Billy what was bothering him, Billy began disclosing to Janice that Pitts had been sexually abusing him.  Billy disclosed to Janice that Pitts had touched Billy's private areas.  Billy further explained to Janice that Pitts had

---

[1] A fictitious name is substituted in order to protect the minor child's identity.

[2] Under Mississippi Rule of Evidence 404(b) and this Court's precedent, Billy was allowed to testify about other sexual abuse occurring outside of Pass Christian.  The trial court found the evidence relevant and necessary to tell a rational and complete story.  *See, e.g.*, ***Brown v. State***, 483 So. 2d 328, 330 (Miss. 1986).

touched Billy's testicles and that Pitts had put his mouth on Billy's "winky-wonky."

¶6. After Billy's initial disclosure, Janice reported the abuse to the Richton, Mississippi, police department in January 2015.[3] Billy also began seeing a therapist after his initial disclosure. It took several months for Billy to fully disclose all the details about the abuse he suffered at the hands of Pitts. Over the course of Billy's disclosures, Janice realized that Pitts had sexually abused Billy while the family lived in Pass Christian. As a result, Janice reported the abuse to the Pass Christian police department, and a forensic interview was arranged. In June 2016, Daniel Dooley, a forensic interviewer at the Child Advocacy Center in Gulfport, Mississippi, conducted a forensic interview of Billy.

¶7. On February 20, 2017, a Harrison County grand jury indicted Pitts on one count of touching Billy for lustful purposes under Section 97-5-23(1). Pitts entered a plea of not guilty on March 20, 2017, and the case proceeded to trial on March 13, 2018.

¶8. Before trial, the trial judge held two separate hearings outside the presence of the jury to determine the admissibility of Billy's disclosures to Janice and Dooley and to determine whether Billy was competent to testify at trial. At the first hearing, Janice and Dooley testified about Billy's disclosures. After the second hearing, the trial judge found Billy competent to testify at trial but reserved ruling on the admissibility of Billy's disclosures until Billy testified.

¶9. At trial, the State called Billy as its first witness. Billy spoke about several instances

---

[3] Janice reported the abuse to Richton Police Department because she assumed that the abuse had happened in Richton: that was the last place that Pitts and Janice had lived together before separating.

of sexual abuse by Pitts that had occurred while Billy was in kindergarten in Pass Christian. Billy explained how Pitts had told him to take his clothes off. Billy described how Pitts touched Billy's testicles and licked Billy's penis after school in the bedroom that Pitts and Janice shared in Pass Christian. Billy testified further that Pitts told him not to tell anyone because Pitts would get into "very big trouble."

¶10. On cross-examination, Billy was asked about the circumstances surrounding his disclosures. Billy explained that after he first told his mother about the abuse, Janice "said thank you and then she called the police." Additionally, defense counsel asked Billy if anyone told him what to say, and Billy replied, "my momma only told me to say the truth." Billy also insisted that no one had promised him a reward for testifying.

¶11. After Billy's testimony in front of the jury, the trial judge conducted a hearing outside the presence of the jury to rule on whether Janice and Dooley could testify about Billy's disclosures to them. The trial judge specifically addressed each reliability factor under Mississippi Rule of Evidence 803(25) on the record and ruled that Billy's disclosures had substantial indicia of reliability and were, therefore, admissible under the tender-years hearsay exception.

¶12. After the trial judge's ruling, Janice testified about Billy's disclosures to her and Dooley testified regarding Billy's forensic interview. After a video recording of the forensic interview was introduced into evidence and played for the jury, Dooley testified that Billy's disclosures during the forensic interview were consistent with a child that had been sexually abused.

4

¶13. Pitts testified and denied all of Billy's accusations. Pitts described a good familial relationship with Billy, and he asserted that Janice had induced Billy to make the accusations after he and Janice separated.

¶14. Pitts was convicted of touching Billy for lustful purposes and was sentenced to serve ten years, day for day, without the possibility of parole or early release in the custody of the Mississippi Department of Corrections. Pitts was also ordered to register as a sex offender upon being released from incarceration. Pitts then filed an unsuccessful motion for a new trial, or in the alternative, judgment notwithstanding the verdict.

¶15. Pitts now appeals and argues that the trial court erred by finding Billy's out-of-court statements admissible under Mississippi Rule of Evidence 803(25). Pitts also argues that the trial court erred by giving jury instruction S-6. As a preliminary matter, we note that Pitts did not raise either of these issues in his motion for a new trial or, in the alternative, judgment notwithstanding the verdict. But the errors now raised by Pitts were preserved by contemporaneous objections in the trial court and are not required to be raised in a posttrial motion. *Jackson v. State*, 423 So. 2d 129, 131–32 (Miss. 1982).[4]

---

[4] In *Jackson v. State*, we held that only certain errors must be brought to the attention of the trial court in a motion for a new trial. *Jackson v. State*, 423 So. 2d 129, 131–32 (Miss. 1982). These errors include all new matters, motions based on the grounds of inadequate or excessive damages, motions contending that the verdict is against the overwhelming weight of the evidence and motions based on the denial of a continuance. *Id.*

**STANDARD OF REVIEW**

¶16.   We review the admission of hearsay evidence for abuse of discretion. ***Blake v. State***, 256 So. 3d 1161, 1168 (Miss. 2018). "This Court will affirm the trial court's ruling unless it can safely say that the trial court abused its discretion in allowing or disallowing evidence to the prejudice of the accused." ***Tubbs v. State***, 185 So. 3d 363, 367 (Miss. 2016) (citing ***Ellis v. State***, 934 So. 2d 1000, 1004 (Miss. 2006)).

¶17.   "This Court reviews the grant or denial of proposed jury instructions for an abuse of discretion." ***Quinn v. State***, 191 So. 3d 1227, 1231–32 (Miss. 2016) (citing ***Victory v. State***, 83 So. 3d 370, 373 (Miss. 2012)). "[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." ***Victory***, 83 So. 3d at 373 (internal quotation marks omitted) (quoting ***Newell v. State***, 49 So. 3d 66, 73 (Miss. 2010)).

**ANALYSIS**

I.    **Whether the trial court abused its discretion by admitting evidence under Mississippi Rule of Evidence 803(25)—the tender-years exception.**

¶18.   Pitts argues that the trial judge abused his discretion by permitting Billy's mother, Janice, to testify about what Billy disclosed to her. Specifically, Pitts asserts that Billy's statements to Janice lacked the substantial indicia of reliability required under Mississippi Rule of Evidence 803(25).

¶19.   At the outset, we note that Billy testified at trial and was subject to cross-examination. On cross-examination, Billy's veracity and motive for testifying were questioned. As a result, Pitts's right to confrontation under the Sixth Amendment is not at issue. *See*

*Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *Marquis v. State*, 242 So. 3d 86, 90 (Miss. 2018). Additionally, Pitts does not dispute that Billy was a child of tender years for purposes of Rule 803(25).

¶20. A fundamental principle of evidentiary law provides that hearsay is "incompetent evidence" unless it falls under one of the exceptions to the rule against hearsay. *Smith v. State*, 724 So. 2d 280, 315 (Miss. 1998) (internal quotation marks omitted) (quoting *Quimby v. State*, 604 So. 2d 741, 746 (Miss. 1992)); *see also* M.R.E. 802 ("Hearsay is not admissible except as provided by law."). An exception to the rule against hearsay is found in Rule 803(25). Also known as the tender-years exception to the rule against hearsay, Rule 803(25) provides that

> [a] statement by a child of tender years describing any act of sexual contact
> with or by another is admissible if:
>
>> (A) the court—after a hearing outside the jury's
>> presence—determines that the statement's time, content, and
>> circumstances provide substantial indicia of reliability; and
>
>> (B) the child either:
>
>>> (i) testifies; or
>
>>> (ii) is unavailable as a witness, and other evidence
>>> corroborates the act.

M.R.E. 803(25).

¶21. The Advisory Committee Note to Rule 803(25) gives a nonexhaustive list of "[s]ome factors that the court should examine to determine if there is sufficient indicia of reliability," including

(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

M.R.E. 803(25) advisory comm. note. "The unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." ***Rogers v. State***, 95 So. 3d 623, 628 (Miss. 2012) (internal quotation marks omitted) (quoting ***Williams v. State***, 35 So. 3d 480, 489 (Miss. 2010)). A trial court's determination of substantial indicia of reliability should be made on the record. ***Id.***

¶22. As required by Rule 803(25), the trial judge in this case conducted a hearing outside the presence of the jury to determine whether Janice and the forensic interviewer could testify about Billy's disclosures. The trial judge specifically addressed each reliability factor in detail on the record, applied appropriate weight to each and made an overall finding that Billy's out-of-court disclosures had substantial indicia of reliability.

¶23. On appeal, Pitts argues that Billy's out-of-court statements lacked substantial indicia of reliability and were not supported by circumstantial guarantees of trustworthiness. Because the trial court's determination that hearsay is admissible under Rule 803(25) resolves both claims, we address Pitts's contentions together.

¶24. First, Pitts maintains that Billy's statements describing the abuse were not spontaneous under the fourth reliability factor because the statements were made over the course of

8

several months. Pitts, however, acknowledges that the twelve reliability factors do not constitute a mechanical test.

¶25.   We find that the determination of whether a statement is spontaneous is best resolved by the trial court in its sound discretion. *See, e.g.*, **Clark v. State**, 693 So. 2d 927, 932 (Miss. 1997) (holding that the spontaneity determination under Rule 803(2) rests within the sound discretion of the trial court). Here, the trial court determined that "[i]t was spontaneous when [Billy] decided to tell [Janice]." Similarly, the trial court found "no evidence at all that the mother or anyone else told [Billy] what to say."

¶26.   Next, Pitts argues that there is a significant likelihood of fabrication surrounding Billy's statements because Billy desired to please his mother and Janice "had been looking for ammunition to use against Pitts." The trial court, however, found that Billy understood and was able to express the difference between the truth and a lie. In fact, the trial court determined that "there's no evidence in front of the [c]ourt to indicate any possible reason for [Billy] to lie about his testimony."

¶27.   Last, Pitts contends that testimony from Janice improperly bolstered Billy's testimony. This Court specifically addressed a defendant's improper bolstering argument in *Marquis*, 242 So. 3d at 91. In *Marquis*, the defendant was convicted of sexual battery of a five-year-old. *Id.* at 89. On appeal, Marquis argued that the trial court had erred by admitting two recordings of the victim's out-of-court disclosures of the abuse. *Id.* at 91. Marquis argued that the recordings improperly bolstered the victim's testimony. *Id.* We disagreed and found that the evidence was "necessary to tell the whole story, as the recording often expanded

upon and provided context to the witnesses' testimony." *Id.*

¶28. Similar to this Court's reasoning in *Marquis*, Janice's testimony provided context to Billy's disclosures and was necessary to tell a coherent story. Janice was able to go into detail about Billy's behavior leading up to his disclosures, and she presented the information through the eyes of a parent instead of those of a child victim. In short, Janice's testimony was not duplicative and did not simply reiterate Billy's testimony.

¶29. We find that the trial court acted within its discretion by concluding that Billy's out-of-court statements were supported by sufficient indicia of reliability. Accordingly, this assignment of error is without merit.

## II. Whether the trial court abused its discretion by granting jury instruction S-6.

¶30. Pitts contends that the trial judge reversibly erred by giving jury instruction S–6. Instruction S–6 stated, "[t]he [c]ourt instructs the jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact."

¶31. At trial, defense counsel objected to instruction S–6, arguing that "the intent of S–6 is fairly covered elsewhere in all the instructions." Defense counsel repeated its objection stating, "I think the content of S–6 is covered in other instructions sufficiently." After the objection was overruled, defense counsel then added that S–6 "just bolsters the testimony."

¶32. Pitts now argues on appeal that "[i]nstruction S–6 was peremptory in nature, constituted an improper comment on the evidence, was argumentative, and it encouraged circumvention of the state's obligation to prove guilt beyond a reasonable doubt." The State

10

contends that Pitts is procedurally barred from raising this issue on appeal because Pitts did not object to instruction S–6 on the same grounds at trial. This Court has held that "'an objection on one ground waives remaining grounds for purposes of appeal . . . .'" ***Ambrose v. State***, 254 So. 3d 77, 118 (Miss. 2018) (quoting ***Evans v. State***, 725 So. 2d 613, 638 (Miss. 1997)). But in light of defense counsel's assertion that the instruction "just bolsters the testimony," Pitts narrowly ducks the procedural bar. Thus, out of an abundance of caution and in line with this Court's practice, we will address the merits.

¶33. It is well-established that "[j]ury instructions must be read as a whole to determine if the instructions were proper." ***Sharkey v. State***, 265 So. 3d 151, 156 (Miss. 2019) (citing ***Milano v. State***, 790 So. 2d 179, 184 (Miss. 2001)). "[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." ***Quinn***, 191 So. 3d at 1232 (internal quotation marks omitted) (quoting ***Victory***, 83 So. 3d at 373).

¶34. Based on this Court's precedent, we find that instruction S–6 reflects an accurate statement of the law. For example, "in ***Miley v. State***, 935 So. 2d 998, 1001 (Miss. 2006), this Court held that 'the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence.'" ***Massey v. State***, 992 So. 2d 1161, 1164 (Miss. 2008) (quoting ***Miley***, 935 So. 2d at 1001)); *see also* ***Price v. State***, 898 So. 2d 641, 651 (Miss. 2005); ***Collier v. State***, 711 So. 2d 458, 462 (Miss. 1998), *disagreed with on other grounds by* ***Dilworth v. State***, 909 So. 2d 731, 735 n.4 (Miss. 2005)).

¶35. Furthermore, the Mississippi Court of Appeals upheld a trial court's decision to give

this exact jury instruction in *Parks v. State*, 228 So. 3d 853, 871 (Miss. Ct. App. 2017), *cert. denied*, 220 So. 3d 977 (Miss. 2017); *see also Willard v. State*, 219 So. 3d 569, 576–77 (Miss. Ct. App. 2017) (holding that a practically identical jury instruction was not a comment on the weight of the evidence). In *Parks*, the Court of Appeals held that instruction S–6 "was not a comment on the evidence, and it did not 'tell the jury how to weigh the credibility of [the victim's] testimony.'" *Willard*, 219 So. 3d at 576 (alteration in original) (quoting *Parks*, 228 So. 3d at 871). The *Parks* court also "noted that other instructions informed the jurors that they must find that the defendant was guilty beyond a reasonable doubt." *Id.* (citing *Parks*, 228 So. 3d at 871).[5]

¶36.    We agree with the Court of Appeals and find that instruction S–6 did not constitute an improper comment on the weight of the evidence. Instruction S–6 did not instruct the jury on how to weigh Billy's testimony. Rather, instruction S–6 properly allowed the jury to determine what weight and credibility to give Billy's testimony. According to the "if accepted as true by the finder of fact" language included in instruction S–6, the jury was free to accept or reject Billy's testimony, especially in light of other instructions given.

¶37.    In addition to instruction S–6, instruction C–1 informed the jury that they were "not to single out one instruction alone as stating the law but [they] must consider these instructions as a whole." Instruction C–1 further informed the jury that it was the "sole judge[] of the facts" and had the "exclusive province . . . to determine what weight and

---

[5] As pointed out by the Court of Appeals in *Willard*, 219 So. 3d at 576–77, other states have upheld substantially similar jury instructions. *See State v. Haid*, 721 S.E.2d 529, 540 (W. Va. 2011); *Daniel v. State*, 675 S.E.2d 472, 477 (Ga. Ct. App. 2009); *Gaxiola v. State*, 119 P.3d 1225, 1232 (Nev. 2005).

credibility will be assigned the testimony and supporting evidence of each witness in this case." Instruction C–5 instructed the jury "not to single out any certain witness or individual point or instruction."

¶38. The jury was also clearly instructed on the elements of Section 97-5-23(1) and the State's obligation to prove Pitts guilty beyond a reasonable doubt. Instruction C–3 read, in pertinent part, "[t]he law presumes every person charged with the commission of a crime to be innocent. . . . [b]efore you can return a verdict of guilty, the State must prove beyond a reasonable doubt that the [d]efendant is guilty." Instruction S–1 explained each element the State was required to prove beyond a reasonable doubt under Section 97-5-23(1). The jury was also instructed that if the State failed to prove Pitts's guilt beyond a reasonable doubt, the jury had the sworn duty to find Pitts not guilty.

¶39. To summarize, we hold that instruction S–6 constitutes an accurate statement of the law applicable to this case and did not improperly comment on the evidence. After reviewing the jury instructions as a whole, it is clear that the jury was properly instructed. As a result, we find that the trial court did not abuse its discretion by giving instruction S–6.

## CONCLUSION

¶40. The trial court properly considered the indicia-of-reliability factors under Rule 803(25) and acted within its discretion by admitting Billy's out-of-court disclosures. Likewise, the trial court did not abuse its discretion by giving jury instruction S–6. We affirm.

¶41. **AFFIRMED.**

13

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY KING, P.J.**

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶42.     Although I agree with the majority's finding that the trial court did not abuse its discretion in this case, I write separately to express my concern regarding jury instruction S-6. Instruction S-6 stated, "[t]he Court instructs the jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." I first note that instruction S-6 was unnecessary in this case, because the victim's testimony was corroborated by the testimony of the victim's mother and by the forensic interviewer.

¶43.     Second, I note that, while the instruction is a correct statement of law that a sex-crime victim's uncorroborated testimony may be sufficient to support a conviction, the better-reasoned approach is to give an extended version of the above-stated instruction. For example, this Court previously has held that "the testimony of the victim of a rape may be sufficient to support a guilty verdict where the victim's testimony is neither contradicted nor discredited by other evidence or by surrounding circumstances." *Dubose v. State*, 320 So. 2d 773, 774 (Miss. 1975) (citing *Lee v. State*, 134 So. 2d 145 (1961)); *see also* *Killingsworth v. State*, 374 So. 2d 221, 223 (Miss. 1979) ("While it is true that a conviction for rape may rest on the uncorroborated testimony of the person raped, that testimony should always be scrutinized with caution." (citing *Richardson v. State*, 17 So. 2d 799 (1944))); *Goode v.*

***State***, 146 So. 2d 74, 75 (1962) ("[T]he uncorroborated testimony of the person alleged to have been raped, while sufficient for conviction, should be scrutinized with caution."); ***Woods v. State***, 973 So. 2d 1022, 1031 (Miss. Ct. App. 2008) ("The totally uncorroborated testimony of a sex crime victim is sufficient to support a guilty verdict where it is consistent with the circumstances and is not discredited or contradicted by other credible evidence." (citing ***Green v. State***, 877 So. 2d 840, 845 (Miss. Ct. App. 2004))).

¶44.   Instructing the jury merely that "the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true" might be construed to encourage a jury to ignore contradictory evidence. The better practice would be to instruct the jury that uncorroborated testimony may be sufficient for conviction if that testimony is not discredited or contradicted by other credible evidence. I also join the portion of Presiding Justice Kitchens's dissent regarding the jury instruction.

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶45.   Respectfully, I dissent. I agree with the majority that the trial judge correctly followed the procedure set forth in Mississippi Rule of Evidence 803(25) and determined that the alleged victim was a child of tender years. But the judge should not have allowed the child's mother to testify about the child's out-of-court statements to her because her testimony served only to bolster the incriminating testimony that was provided by the child himself. In addition I would find that the trial court erred by giving jury instruction S-6. That instruction is an improper judicial comment on the evidence, and it is not a complete statement of the applicable law. I would reverse and remand this case for a new trial.

### A. Improper Bolstering

¶46. The trial judge erred by allowing the child's mother to bolster Billy's testimony. Her testimony was repetitious and cumulative. Defense counsel objected to it on the ground that Billy already had provided the same information in his testimony. Defense counsel argued that the only legitimate reason for allowing the mother to testify would be to corroborate, not merely to repeat, what Billy already had told the jury, which was "just bolstering" his testimony.[6] It appears that the judge permitted the mother to testify under the rationale that the State was entitled to present corroborating evidence. That ruling was erroneous because the mother's testimony was not corroborative of the child's detailed courtroom account of what he contended the defendant had done to him. Rather, it was a mere reiteration of the child's testimony.

¶47. The word *corroborate* means "to add weight or credibility to a thing by additional and confirming facts or evidence" and "to support with evidence." *Corroborate*, Black's Law Dictionary (6th ed. 1990); *see Corroborate*, Webster's New Dictionary of the English Language (2001 ed.). The term *corroborating evidence* means "[e]vidence supplementary to that already given and tending to strengthen or confirm it" and "additional evidence of a different character to the same point." *Corroborating Evidence*, Black's Law Dictionary (6th ed. 1990). *Bolstering* is defined as "occurr[ing] when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence

---

[6]Defense counsel also objected, on the ground of bolstering, to the testimony of the forensic interviewer and to the video of his initial interview with Billy. But Pitts does not raise those issues on appeal.

offered by the same party." *Bolstering*, Black's Law Dictionary (6th ed. 1990). Testimony simply restating what a prior witness already has said does not qualify as corroborating evidence.

¶48.  To be considered corroborating evidence, the testimony of the mother would have to provide additional facts that strengthened and/or confirmed Billy's testimony and that had not been established already by prior testimony. To the contrary, the mother's testimony simply was repetitious of Billy's and merely repeated what Billy had told her the defendant had done to him. It did nothing to assist the jurors in the performance of their duties.

¶49.  Allowing the mother to testify would serve only to bolster Billy's testimony that had already been bolstered. During the forensic interviewer's testimony, the jury viewed a recording of his initial interview with Billy in which the child described in detail what had happened to him. Pitts argues correctly that there was no need for the mother to testify because Billy had testified to those statements and because the video had been played for the jury. The video itself was repetitious and cumulative. Because the State had been allowed to present a repetitive and cumulative video to restate Billy's testimony, it was all the more improper for the State to bolster Billy's testimony further with the mother's testimony.

¶50.  The child's testimony had not been impeached, and his credibility had not been attacked. "The law is well settled . . . that unless the opponent first attacks the witness's credibility, no evidence may be admitted simply to support or bolster credibility." Parham H. Williams, *Williams on Mississippi Evidence* § 6.26 (2013). Whether Billy had, indeed, given a prior statement inconsistent with his testimony under oath was not in dispute, then or now.

17

The testimony of the child's mother did nothing more than reiterate and bolster Billy's unimpeached, uncontested testimony and was an improper attempt by the State to add weight to that testimony. In its closing argument, the State characterized all other trial evidence, except Billy's, as "elaborate." Thus, the prosecutor acknowledged that the testimony of the mother and the interviewer were superfluous.

¶51. Billy's testimony was direct, to the point, and powerful. It covered all the elements of the crime charged. Nothing more was needed, and nothing more was provided by the cumulative testimony of the mother. "[T]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Miley v. State*, 935 So. 2d 998, 1001 (Miss. 2006) (citing *Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998), *disagreed with on other grounds by Dilworth v. State*, 909 So. 2d 731 (Miss. 2005)). Here, the only testimony that discredited or contradicted Billy's testimony was Pitts's denial. "[T]he jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980). A reasonable jury may have found Billy's testimony alone sufficient to support a conviction.

### B.    Improper Jury Instruction

¶52. The trial court granted the following instruction: "The [c]ourt instructs the jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." Jury instruction S-6 was an improper comment on the evidence by the trial court because it singled out one witness's testimony and, in effect,

18

invited the jurors to disregard everything else that was presented at trial. "A jury instruction that emphasizes any particular part of the testimony given at trial in a manner as to amount to a comment on the weight of the evidence, is improper." *Montgomery v. State*, 891 So. 2d 179, 184 (Miss. 2004) (citing *Manuel v. State*, 667 So. 2d 590, 592 (Miss. 1995)). This Court "repeatedly ha[s] affirmed the trial court's denial of jury instructions that attempt to tell the jury what weight to assign to the evidence, rather than allowing the jury to make its own credibility determinations." *Robinson v. State*, 247 So. 3d 1212, 1223 (Miss. 2018); *see Hansen v. State*, 592 So. 2d 114, 141 (Miss. 1991); *Goss v. State*, 413 So. 2d 1033, 1035 (Miss. 1982); *Hines v. State*, 339 So. 2d 56, 58 (Miss. 1976). Jury instruction S-6 is such a strong and direct statement by the trial judge that a jury very well might seize upon it and focus all of its attention on one witness, rather than weighing that testimony along with the other evidence and making its own determination with regard to the weight and worth of a particular witness's testimony. *See Batiste v. State*, 121 So. 3d 808, 880 (Miss. 2013) ("It was within the province of the jury to weigh the facts and circumstances and determine whether the State had proved its case beyond a reasonable doubt."). Instruction S-6 is an improper comment on the evidence, and it is peremptory in nature.

¶53.    Jury Instruction S-6 is not a fair and complete statement of applicable law because it fails to include essential language necessary to define the standard required to convict based on the uncorroborated testimony of a sex-crime victim.  This Court has articulated that standard as follows: "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict *where that testimony is not discredited or contradicted by other*

*credible evidence.*" ***Miley***, 935 So. 2d at 1001 (emphasis added) (citing ***Collier***, 711 So. 2d at 462). Instruction S-6 omitted the essential qualifying phrase, "where that testimony is not discredited or contradicted by other credible evidence." As written, jury instruction S-6 materially altered and diluted the applicable standard. The omission is of enormous significance and renders the instruction fatally defective.

¶54.  Instruction S-6 also failed to require that the jury believe the alleged victim's testimony beyond a reasonable doubt. The instruction required only that the jury accept the testimony as true in order to convict. But the standard in a criminal case that is based on direct evidence, as here, is proof beyond a reasonable doubt. Further, it is not enough to say that the essential concepts of proof beyond a reasonable doubt and of not singling out one witness are covered in other instructions. This is because an instruction such as S-6 is so direct and forceful that it easily could overshadow the other instructions to the point of their not being considered.

¶55.  Because of the erroneous allowance of the cumulative, repetitious, and bolstering testimony of the mother and the erroneous granting of jury instruction S-6, I would reverse and remand for a new trial.

**KING, P.J., JOINS THIS OPINION IN PART.**