*In the Court of Appeals of Virginia on*   **Tuesday**   *the*  **10th**  *day of*  **January, 2023**.

Dilliraj Bista,                                                                                   Appellant,

 against            Record No. 0904-21-4
                    Circuit Court No. FE-2019-716

Commonwealth of Virginia,                                                         Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Humphreys, Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins and White

On December 19, 2022 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on December 6, 2022, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,

Teste:

A. John Vollino, Clerk

*original order signed by a deputy clerk of the*
By:   *Court of Appeals of Virginia at the direction*
      *of the Court*
                    Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:    Judges O'Brien, Lorish and Senior Judge Annunziata
Argued at Alexandria, Virginia

**PUBLISHED**

DILLIRAJ BISTA

v.        Record No. 0904-21-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROSEMARIE ANNUNZIATA
DECEMBER 6, 2022

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Dawn M. Butorac, Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Dilliraj Bista of sodomy of a child under the age of thirteen years by a

person eighteen years of age or older and aggravated sexual battery, in violation of Code

§§ 18.2-67.1 and 18.2-67.3, respectively.[1]  Consistent with the jury's verdict, the trial court

sentenced Bista to life plus twenty years' incarceration.  Bista challenges his convictions on

several grounds.  First, Bista argues that the trial court erroneously admitted the child's

out-of-court statements under Code § 19.2-268.3.  As a matter of first impression, we must

decide whether that statute conditions admissibility on the declarant's competency to testify.  We

hold that it does not.  Bista also argues that the trial court's admission of a video depicting the

child's forensic interview violated his right to confrontation under the Sixth Amendment of the

United States Constitution.  Next, Bista contends that the trial court erroneously rejected two

---

[1] The jury acquitted Bista of a related charge of rape of a child under the age of thirteen
years by a person eighteen years of age or older.

proffered jury instructions.  Finally, he argues that the trial court improperly limited the scope of his closing argument.  For the following reasons, we affirm the trial court's judgment.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In August 2018, R.P. was eleven years old and living with her younger brother and parents, Hem and Rita.  R.P. suffers from autism spectrum disorder, which impairs her socialization, memory, and ability to learn and communicate.  Hem and Rita had immigrated from Nepal and formed a close relationship with Bista and his family, who were also Nepali.  R.P. referred to Bista as "grandpa" and communicated with him through gestures and basic English and Nepali phrases.

On August 17, 2018, Bista had been staying at R.P.'s home for several days while his wife visited Nepal.  That evening, Hem prepared dinner in the kitchen with his parents while Bista smoked a cigarette outside on the "back deck."  R.P. and her brother were alone in a living room on the opposite side of the house.  Around 8:30 p.m., Rita went upstairs to shower and when she returned downstairs at 8:45 p.m., she found Bista kneeling behind R.P. on the living room floor.  R.P. was on her hands and knees in a "dog position" with her underwear and shorts pulled down.  Rita screamed and took R.P. upstairs to question her with Hem.  R.P. told her parents that Bista had "licked [her] on the front and back" and "put it on the front and tried to put it on the back."  Rita removed R.P.'s clothing and placed it inside a plastic grocery bag, tying the

bag closed. Bista initially denied any wrongdoing, assuring Rita and Hem that he had been "playing" with R.P., but he later admitted to them that he had "licked [her] private part." R.P.'s parents did not report the incident to police, fearing that disclosure would harm their family's prestige in the Nepali community. Bista moved to Hawaii the following week.

On January 29, 2019, R.P. told her special education teacher, Brian Rothe, that "the previous summer in August" she had been "raped by a family friend" who "looked like a grandpa." She told Rothe that the man had "gone back to Nepal" after her mother caught him "touching [her] inappropriately" and had "kicked him out of the house." Rothe notified R.P.'s parents, and Child Protective Services (CPS) was notified of the allegations. The next day, CPS contacted Fairfax County Detective Thomas Gadell, Jr., to investigate.

At Gadell's request, Maria Bonilla conducted a video-recorded forensic interview of R.P. at SafeSpot Children's Advocacy Center.[2] Describing the incident, R.P. told Bonilla that "Grandpa Bista" and his family had visited her home for a "dinner party." Bista found R.P. alone in the living room and forcefully kissed her by grabbing her neck. R.P. said she tried to run away but Bista pulled her shirt "nine or ten times," causing her to fall. Bista forced R.P. into a "dog" position and removed her shorts. Pointing to her groin, R.P. explained that Bista's "mouth was going crazy" as he kneeled behind her and attempted to "lick" her "private part." R.P. also said that Bista's penis "tr[ied] to go in her butt." She stated that Bista had used his

---

[2] Michelle Thames, the executive director of SafeSpot, testified at a pretrial hearing that a "forensic interview" is a special interview "conducted in [a] neutral setting by a trained professional forensic interviewer" when "a child makes an allegation of child abuse." SafeSpot accepts "referrals" to conduct such interviews exclusively from "law enforcement and [CPS]." Detective Gadell arranged the interview. He provided details of the suspected abuse to Bonilla before she conducted the interview. Gadell watched the interview on a "closed circuit television" in an adjacent room and Bonilla conferred with him to "make sure [he] didn't have any additional questions" before concluding the interview.

"flip phone" during the assault to video record her "butt" and "private parts," but someone had since deleted the videos and the phone was "lost."

Police collected the grocery bag containing R.P.'s clothing worn during the assault. After Bista's arrest and extradition from Hawaii, Gadell interviewed him[3] and obtained a buccal swab of his DNA. Police also obtained buccal swabs of R.P.'s and Hem's DNA. Subsequent DNA testing established that Bista could not be eliminated as a contributor to a DNA mixture discovered in the "interior crotch" of R.P.'s underpants. In June 2019, a forensic nurse conducted a "wellness exam" and concluded that R.P. had "no injuries" to her vagina or anus.

Material Proceedings Below

A. Preliminary Hearing and Indictment

On September 5, 2019, R.P. testified[4] at a preliminary hearing that Bista's wife drove him to her home before the incident. R.P. stated that Bista initially "just touched [her] private parts without taking [her] shorts off." Bista then removed his pants and exposed his "penis" before inserting it into R.P.'s vagina and "butt." For the next "forty minutes," Bista kept "doing these stuff over and over again," although R.P. "yelled at [Bista]" and "tried to leave the room several times."

During cross-examination, R.P. testified that Bista *did not* "pull [her] shirt" during the assault, but he "prevented [her] from leaving" the room by "blocking" the entrance. Bista also "left his phone in [a] bag" during the assault and contrary to earlier statements she made during the forensic interview, he did not use it to photograph or record her.[5] R.P. explained that she

_____

[3] The trial court ruled that Bista's interview statements were inadmissible at trial.

[4] Bista did not challenge R.P.'s competency to testify at the preliminary hearing.

[5] The record reflects that on August 15, 2019, the Commonwealth provided a copy of the forensic interview video to Bista's trial counsel.

learned the terms "penis," "vagina," and "sex" through online research as a nine-year-old, and since she was "8 to 10 years old," R.P. had watched videos of "people having sex" on the website "Pornhub."

The district court certified the charges to the grand jury, which subsequently indicted Bista for sodomy of a child under the age of thirteen years and aggravated sexual battery. The Commonwealth also directly indicted Bista for rape.[6]

### B. Hearing on Motion to Admit Statements under Code § 19.2-268.3

Before trial, the Commonwealth moved the trial court to admit R.P.'s out-of-court disclosures to her parents, teacher, and Bonilla under Code § 19.2-268.3, which makes admissible certain hearsay statements of child victims of specified crimes. Following briefing by counsel, the trial court conducted an evidentiary hearing at which Rita testified that she saw Bista kneeling "very close" behind R.P., whose shorts were "below her knees." When questioned, R.P. told Rita that Bista "tried to put his organ inside [her] front and back" and "licked" her "private parts." Rita denied that R.P. had ever watched internet pornography and maintained that R.P. "never lies." She explained that R.P. was "mildly autistic" and had the "mental" age of a "four to five-year-old child."

Hem testified that immediately after the incident, R.P. said that Bista had "put his private part into [her] private part" and "licked it." Hem also denied that R.P. had ever lied, explaining that she suffered from cognitive deficits and could not distinguish "what is bad and what is good" because of her autism.

Rothe could not "remember exactly" whether R.P. had reported that her attacker had "attempted" or "actually accomplished" the alleged acts of sexual abuse. He also did not recall

---

[6] The Commonwealth later amended the sodomy and rape indictments to include language specifying that Bista was over the age of eighteen years during the offenses.

R.P. "saying anything about being licked." R.P. required an IEP[7] at school because of her autism. In Rothe's experience, she engaged in "attention-seeking behavior" at school—including "randomly" telling stories and striking "promiscuous poses"—but, to his knowledge, she had never fabricated an allegation of sexual abuse.

Bonilla was no longer employed at SafeSpot, but Michelle Thames, SafeSpot's executive director, authenticated the video from R.P.'s forensic interview; Thames also confirmed that Bonilla had followed "appropriate interview techniques."[8]

The trial court considered the factors enumerated in Code § 19.2-268.3 and found that, as the victim, R.P. had "personal knowledge of the event." In addition, "extrinsic evidence" established Bista's "opportunity to commit the act," including Rita's personal observations of "physical interactions" that were "consistent with [R.P.]'s statement." The trial court found no motive for R.P. or her parents to fabricate the accusations, and it found Rothe, Rita, and Hem's testimony credible. Finally, the trial court found that R.P. provided "a very detailed recollection of the event," despite "some inconsistencies" and being "mildly autistic." Thus, the trial court concluded that "sufficient indicia of reliability" rendered her statements "inherently trustworthy" and therefore admissible under Code § 19.2-268.3.[9]

---

[7] According to Rothe's testimony, an "IEP" is an "Individualized Education Program" designed to accommodate the specialized needs of children with "learning" or "emotional" disabilities.

[8] The trial court reviewed the video of R.P.'s forensic interview, which the Commonwealth introduced as an exhibit during the hearing.

[9] The trial court ruled that the video of the forensic interview was inadmissible to the extent it contained statements irrelevant to "the purported acts directed against [R.P.]." Accordingly, the trial court ordered the Commonwealth to redact those portions of the video.

C. Hearing on Victim's Competency and Bista's Motion to Exclude Forensic Interview Video

Bista then moved to exclude the video of R.P.'s forensic interview from trial under the Sixth Amendment's Confrontation Clause. Bista also requested an evidentiary hearing to determine R.P.'s competency to testify. Following additional briefing by counsel,[10] the trial court conducted another evidentiary hearing.

Detective Gadell testified that at a pre-hearing meeting with the prosecutor, R.P. had disclosed that some of her preliminary hearing testimony was false. R.P. said that Bista's wife had been "on vacation" during the incident and it was untrue that R.P. watched internet pornography. Hem testified regarding the meeting and denied that R.P. had intentionally lied. Rather, R.P.'s autism diminished her capacity to answer questions. Hem explained that R.P. "cannot focus a long time" and "will just say things that aren't true without thinking about it" unless granted a "break" from questioning. Hem also denied that he or Rita had ever "coached" R.P.'s testimony regarding the assault.

R.P. was examined regarding her comprehension of an oath and ability to tell the truth. The prosecutor asked, "[I]f I were to say this wall behind you is black w[ould] that be telling the truth or telling a lie?" R.P. replied, "[t]elling the truth," despite confirming that the wall was "beige." During cross-examination, R.P. told counsel, "The color of your car is probably 2268 or something." When defense counsel asked the number of people to whom R.P. had reported the assault, R.P. described an unrelated incident in which an "Indian person" contacted her on social media and said that she was "sexy."

R.P. admitted that she had testified to "false facts" at the preliminary hearing; she stated that Bista's wife *had not* driven him to her home, and she had "purposely lied" about watching internet pornography. She explained that after the preliminary hearing, "My mom said that I

---

[10] In their briefs, the parties did not dispute that Bonilla was unavailable to testify at trial.

don't watch the videos" and said "I was lying." Continuing, R.P. testified, "My mom is trying to make me not think I watch" and "told me that it was a secret" and "does not want to tell that to the judge." R.P. also admitted that she had lied to her parents and teachers regarding unrelated matters. She maintained, however, that she was "telling the truth" about the assault and again described it in detail. Defense counsel asked R.P. specifically whether she had "ever changed [her] story about" the assault. R.P. responded, "Yeah," but maintained, "I just changed the part where [Bista's] grandma came into the house."[11]

The trial court found that R.P. had the capacity to "observe," "recall," and "communicate" events "to the extent that she has alleged to have been at home with [Bista] and has a recollection." The trial court also found that Rita "had some influence" on R.P.'s memory of "whether she was sodomized." On balance, the trial court determined that R.P. did not have the "capacity to comprehend the legal significance of an oath," "distinguish truth from a falsehood," or "understand the questions propounded and make intelligent answers." Accordingly, the trial court concluded that R.P. was "not competent to testify at this time."

On the motion to exclude the video of the forensic interview, the trial court concluded that Bonilla's statements were not testimonial hearsay because they were not offered for their truth, but to "give context" to R.P.'s responses during the interview. Accordingly, the trial court ruled those statements admissible. The trial court deferred ruling on the admissibility of R.P.'s interview statements and set a hearing for further argument.

D. Hearing on Motion to Reconsider Ruling on Admissibility under Code § 19.2-268.3

Bista moved the trial court to reconsider its ruling on the admissibility of R.P.'s out-of-court statements under Code § 19.2-268.3. In denying Bista's motion, the trial court

---

[11] From the context, it appears that R.P. was referring to Bista's wife driving him to R.P.'s residence before the assault, rather than Bista's grandmother.

explicitly considered each of the statutory factors and reiterated its previous findings. In addition, the trial court found that no evidence established "that [R.P] was in pain or distress when making the statements." The trial court concluded that "the totality of the circumstances" established that R.P.'s out-of-court statements to her parents, teacher, and Bonilla were "inherently trustworthy," notwithstanding R.P.'s "age," "mental infirmities," and prior "inconsistent statements." The trial court also found that the DNA evidence, Bista's inculpatory admissions, and Hem and Rita's testimony describing the incident sufficiently corroborated Bista's alleged acts of sexual abuse.

On the motion to exclude the forensic interview video, the trial court concluded that R.P.'s statements to Bonilla were testimonial hearsay but Bista previously had "the opportunity at the preliminary hearing to cross examine [R.P.] about the specific allegations."[12] Accordingly, the trial court ruled those statements admissible at trial.[13]

### E. Trial and Post-Conviction Proceedings

Neither R.P. nor Bonilla testified at trial. During opening statements, the Commonwealth and Bista advised the jury that R.P. was unavailable because the trial court had found her incompetent to testify.

The Commonwealth introduced the video of R.P.'s forensic interview and a transcript of her preliminary hearing testimony. The nurse who had conducted the "wellness check" testified

---

[12] During argument on the motion, Bista's counsel conceded that at the preliminary hearing, she had a copy of the forensic interview video and that the Commonwealth did not object during R.P.'s cross-examination. Defense counsel argued, however, that R.P.'s cross-examination during the preliminary hearing was insufficient because at the time "Bista was not charged with the crime of rape," R.P. was likely incompetent because of her autism, counsel had not received complete discovery concerning R.P.'s statements regarding the incident or school records disclosing R.P.'s history of IEPs, and R.P. later admitted to testifying falsely at the preliminary hearing.

[13] The trial court also granted the Commonwealth's separate motion to admit a transcript of R.P.'s preliminary hearing testimony at trial, over Bista's objection.

that the results of her examination of R.P. were "normal." Rita and Hem testified regarding the incident, and Rothe recounted R.P.'s disclosures.

Mimi Smith, a senior forensic analyst with the Virginia Department of Forensic Science, was qualified as an expert in "forensic biology and DNA and body fluids." Using "Y-chromosome" DNA analysis, she developed a "major profile" from a DNA mixture found in the interior of the "crotch" of the underpants R.P. had worn during the assault; the major profile comprised DNA from two male contributors. Smith eliminated Hem as a contributor but could not eliminate Bista—or "any of his patrilineally related male relatives"—as a contributor to the major profile.[14] Bista was the only member of his family present during the alleged assault.

During his case-in-chief, Bista introduced a transcript of R.P.'s testimony from the competency hearing and the trial court's order finding her incompetent to testify. Dr. Brandie Bartlett, an expert in "clinical and child psychology," testified that "people with autism have more difficulty maintaining lies." Based on her review of R.P.'s school records,[15] the transcript of her preliminary hearing testimony, and the forensic interview video, Dr. Bartlett opined that R.P. had "memory issues" and a limited capacity to "recall the details of a story in the correct sequence." In addition, Dr. Bartlett noted that R.P.'s academic history reflected that she required IEPs, failed standardized tests, and exhibited "hyperactivity," "inattentiveness," and "significant delays in expressive and receptive language."

Dr. Thomas McClintock, an expert in "forensic DNA analysis," testified that DNA can transfer among surfaces and degrade from contaminants. He opined that because R.P.'s clothing

---

[14] Smith testified that she observed the major profile zero times in 29,275 unrelated individuals, and applying a 95% upper confidence interval resulted in a frequency of approximately one in 2,800 individuals in the Caucasian population, 2,300 individuals in the African American population, and 2,000 individuals in the Hispanic population.

[15] The trial court admitted R.P.'s school records into evidence.

had been stored in a tied plastic bag for approximately six months, the DNA present in R.P.'s underpants may not have originated from Bista's direct physical contact, and "moisture" and "microbial growth" potentially contaminated the DNA. Dr. McClintock also testified that he had reviewed Smith's "raw data" and "could not exclude" Hem as a contributor to the "major" DNA profile recovered from the interior crotch of the underpants. In rebuttal, Smith testified that she observed no evidence of "mold" or DNA "degradation" during her analysis.

The Commonwealth argued to the jury that R.P.'s allegations were credible, emphasizing consistencies among R.P.'s out-of-court statements, prior testimony, and the DNA evidence. Bista countered that the "Commonwealth's entire case rises and falls on whether or not you believe [R.P.]" and asserted there was "absolutely no reason" to do so. Citing specific examples from R.P.'s school records, Bista argued that she was unable to provide an accurate account or discern the truth. Continuing, Bista argued that autistic children "can't maintain their lie and that's exactly what we have here." Bista urged the jury to disbelieve R.P. because her competency hearing testimony proved that she "clearly" lacked any "understanding of what it means to tell the truth or to tell a lie," which he asserted—without objection—was the reason R.P. had been declared incompetent to testify. Noting multiple inconsistencies in R.P.'s accounts—including numerous examples from R.P.'s forensic interview statements—Bista argued that R.P. "is incredibly influenced by things her parents say," her assertions were sometimes physically impossible, and "[w]e know that every single thing that [she] has said has been inconsistent with something previously." Bista concluded that R.P. "cannot be believed."

The jury convicted Bista of sodomy of a child under the age of thirteen years by a person eighteen years of age or older and aggravated sexual battery. The trial court denied Bista's subsequent motion to set aside the jury's verdict.[16] Bista appeals.

## ANALYSIS

### I. Admissibility of the Child's Out-of-Court Statements

#### A. Standard of Review

This Court "review[s] a trial court's decision to admit or exclude evidence" for abuse of discretion and "will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). When evaluating a trial court's evidentiary ruling, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). The "abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Carter*, 293 Va. at 543-44 (alteration in original) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "In determining whether the trial court made an error of law, 'we review the trial court's statutory interpretations and legal conclusions *de novo*.'" *Auer v. Commonwealth*, 46 Va. App. 637, 643 (2005) (quoting *Rollins v. Commonwealth*, 37

---

[16] During argument on the motion, Bista's trial counsel reiterated that R.P.'s cross-examination during the preliminary hearing did not satisfy the Confrontation Clause because after the hearing, the Commonwealth brought an additional charge, Bista received more discovery and school records, R.P. admitted to falsely testifying at the preliminary hearing, and the trial court found her incompetent to testify.

Va. App. 73, 79 (2001)); *see also Cortez-Rivas v. Commonwealth*, 300 Va. 442, 444 (2022) (observing that appellate courts review de novo "whether the admission of evidence violates a defendant's confrontation right" (quoting *Logan v. Commonwealth*, 299 Va. 741, 745 (2021))).

"The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Witt v. Commonwealth*, 215 Va. 670, 674 (1975)). A trial court resolves factual questions underlying admissibility. *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001). Such findings are binding on appeal "unless 'plainly wrong' or without evidence to support them." *Campos*, 67 Va. App. at 702 (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)).

### B. The trial court properly construed and applied Code § 19.2-268.3.

Bista contends that R.P.'s out-of-court statements concerning the sexual abuse were inadmissible under Code § 19.2-268.3 because "[o]nce [R.P.] was declared incompetent to testify, her statements no longer met the requirement of being inherently trustworthy." Bista also argues that the trial court improperly weighed the statutory factors to conclude that R.P.'s statements were inherently trustworthy. Bista maintains that R.P.'s statements were "inherently *un*trustworthy" considering her falsehoods, inconsistent accounts, and "attention-seeking" behavior. Finally, Bista contends that the record lacks the "corroborative evidence" of the alleged acts of sexual abuse Code § 19.2-268.3(B)(2)(b) requires. We disagree.

"The primary purpose of statutory interpretation 'is to ascertain and give effect to legislative intent.'" *Holloway v. Commonwealth*, 72 Va. App. 370, 375 (2020) (quoting *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018)). This Court "determines legislative intent from the words employed in the statute." *Botkin*, 296 Va. at 314 (quoting *Alger v. Commonwealth*, 267 Va. 255, 259 (2004)). "When the language of a statute is unambiguous, we are bound by the

- 13 -

plain meaning of the words used." *Antisdel v. Ashby*, 279 Va. 42, 48 (2010). Moreover, we

"'presume that the legislature chose, with care, the specific words of the statute' and that '[t]he

act of choosing carefully some words necessarily implies others are omitted with equal care.'"

*VEPCO v. State Corp. Comm'n*, 300 Va. 153, 163 (2021) (alteration in original) (quoting

*Wal-Mart Stores East, LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020)). "Courts are not

permitted to rewrite statutes. This is a legislative function. The manifest intention of the

legislature, clearly disclosed by its language, must be applied." *Chesapeake Hosp. Auth. v. State

Health Comm'r*, ___ Va. ___, ___ (May 19, 2022) (quoting *Anderson v. Commonwealth*, 182

Va. 560, 566 (1944)).

### 1. Competency and Admissibility under Code § 19.2-268.3

As a matter of first impression, we must determine whether Code § 19.2-268.3

categorically bars a child victim's out-of-court statements describing any act directed against the

child relating to an offense against children when, as here, the trial court has found the child

incompetent to testify. We hold that it does not.

Code § 19.2-268.3 creates a hearsay exception for the out-of-court statements of child

victims of specified crimes, provided that: (1) "the time, content, and totality of circumstances

surrounding the statement[s]" provide "sufficient indicia of reliability" to render the statements

"inherently trustworthy," and (2) the child testifies or is declared unavailable to testify. Code

§ 19.2-268.3(B). To determine whether the statements are "inherently trustworthy," the trial

court "may consider" six non-exclusive enumerated factors. Code § 19.2-268.3(B)(1)(a)-(f). If

the child is declared unavailable to testify, the statute mandates that there must be "corroborative

evidence of the act relating to an alleged offense against children." Code § 19.2-268.3(B)(2)(b).

Read plainly, Code § 19.2-268.3 does not predicate admissibility on the child's

competency to testify. *See Chenevert v. Commonwealth*, 72 Va. App. 47, 57 (2020) (holding

- 14 -

that the "only" limitations on admissibility under Code § 19.2-268.3 are those the statute

expressly contains). To the contrary, the statute expressly contemplates that some children will

be unavailable and addresses that circumstance by requiring "corroborative evidence of the act"

giving rise to the charge. Code § 19.2-268.3(B)(2)(b). But Bista's proposed categorical rule that

a finding of incompetency necessarily renders the out-of-court statement inadmissible is

inconsistent with the statute's express provision for exactly that circumstance. We may not

"rewrite" the statute to include a competency requirement that the General Assembly has

omitted. *Chesapeake Hosp. Auth.*, ___ Va. at ___ (quoting *Anderson*, 182 Va. at 566).

Accordingly, we decline Bista's invitation to do so. *Cf. Chenevert*, 72 Va. App. at 57 (declining

to construe Code § 19.2-268.3 as limiting admissibility to statements made during forensic

interviews).[17]

Fortifying this conclusion, the United States Supreme Court has considered similar

statutes in the context of the Confrontation Clause and recognized that a child sexual assault

victim's incompetency to testify does not *per se* render the child's out-of-court disclosures

inadmissible. In *Ohio v. Clark*, 576 U.S 237, 250-51 (2015), the Supreme Court held that the

trial court's admission of a three-year-old child abuse victim's hearsay statements under Ohio's

"tender years" statute[18] did not violate the Confrontation Clause, despite the child's

---

[17] Other state courts have considered so-called "tender years" statutes similar to Code § 19.2-268.3 and held that a child sexual assault victim's incompetency to testify does not automatically preclude admission of the child's out-of-court disclosures of abuse. *See, e.g.*, *Commonwealth v. Walter*, 93 A.3d 442, 452 (Pa. 2014) (holding that a child's competency to testify "is a distinct issue from the admissibility of a child's out-of-court statements" under tenders years statute); *In re Cindy L.*, 947 P.2d 1340, 1353 (Cal. 1997) (holding that a child's "truth competence is a factor in determining the reliability of a hearsay statement" but "not necessarily" dispositive); *State v. Doe*, 719 P.2d 554, 557-59 (Wash. 1986) (en banc) (holding that a child victim's incompetency did not bar admission of his hearsay statements under statutory tender years act). Although not binding on this Court, such authority is persuasive.

[18] Ohio's tender years statute allows hearsay by certain child victims describing completed or attempted acts of "sexual activity" or "physical harm" if, in addition to other

- 15 -

unavailability for cross-examination due to his incompetency to testify. The Supreme Court reasoned that "at the time of the founding," common law courts "regularly admitted" hearsay from child sexual assault victims despite their unavailability because of their incompetency. *Id.* at 249. Similarly, in *Idaho v. Wright*, 497 U.S. 805, 824 (1990),[19] the Supreme Court held that even though the trial court had found the child victim incompetent to testify at trial, the admission of her out-of-court statements describing her sexual abuse under Idaho's residual hearsay exception[20] did not violate the Sixth Amendment. The Supreme Court expressly rejected the contention that the child's out-of-court statements were "*per se* unreliable, or at least presumptively unreliable, on the ground that the trial court found [her] incompetent to testify at trial." *Id.* The Supreme Court emphasized that the "Confrontation Clause does not erect a *per se* rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial." *Id.* at 825.

In sum, the plain language of Code § 19.2-268.3 dispels Bista's claim that the statute categorically bars the admission of a child's out-of-court statement when the trial court has found that child incompetent to testify. That the United States Supreme Court and other state courts have rejected similar claims solidifies this conclusion. Accordingly, we hold that the trial court

requirements, "the court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement" reliable and "there is independent proof of the sexual activity." Ohio Evid. R. 807(A)(1).

[19] *Crawford v. Washington*, 541 U.S. 36, 52 (2004), and its progeny have since overruled *Wright*'s progenitor, *Ohio v. Roberts*, 448 U.S. 56 (1980), by supplanting the "reliability test" with the now-familiar "primary purpose" test for determining whether the admission of hearsay violates the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 823 (2006). Nevertheless, *Wright* remains informative in the context of interpreting hearsay statutes.

[20] Idaho Rule of Evidence 803(24)(A) made admissible out-of-court statements otherwise unaddressed by other exceptions to the rule against hearsay provided that, *inter alia*, the statements had "equivalent circumstantial guarantees of trustworthiness."

- 16 -

correctly concluded that R.P.'s incompetency to testify did not automatically render her hearsay statements inadmissible.

## 2. Weighing of Statutory Factors

Bista further contends that the trial court erroneously weighed the factors enumerated in Code § 19.2-268.3 to conclude that R.P.'s statements were inherently trustworthy. He argues that "inconsistencies" and falsehoods in R.P.'s multiple accounts of the assault, considered with her impaired "maturity and mental state" made her statements "inherently untrustworthy." Bista also argues that the trial court should have concluded from R.P.'s history of "attention-seeking behavior" that she had a "motive to falsify her claims." In essence, Bista asks this Court to reassess the trial court's factual conclusions.

We are "bound by the trial court's 'findings of historical fact unless "plainly wrong" or without evidence to support them.'" *Park v. Commonwealth*, 74 Va. App. 635, 645 (2022) (quoting *McGee*, 25 Va. App. at 198); *see McMillan v. Commonwealth*, 277 Va. 11, 18 (2009) (On appeal "great deference is given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." (quoting *Young v. Commonwealth*, 275 Va. 587, 590 (2008))). Thus, we must defer to the fact finder's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Abdullah v. Commonwealth*, 53 Va. App. 750, 755 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The record supports the trial court's conclusion that R.P.'s statements to her parents, teacher, and Bonilla were inherently trustworthy. The evidence established R.P.'s "personal knowledge of the event" and that she provided detailed and largely-consistent accounts of the assault to her parents, teacher, and Bonilla. *See* Code § 19.2-268.3(B)(1)(a). Rita and Hem consistently testified that immediately after the assault, R.P. reported that Bista had touched and

- 17 -

"licked" her "private parts." Consistent with that disclosure, R.P. told Rothe that she had been raped by a family friend the previous summer in August. The video of R.P.'s forensic interview demonstrated that R.P. provided a detailed account of the assault consistent with her previous accounts. Furthermore, despite some discrepancies, R.P.'s testimony "did not waiver" with respect to the essential acts constituting the offenses. *See Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (holding that a "child's mental health history" and "inconsistencies" in the child's account "bear[] on the weight to be given her testimony" but do not render such testimony inherently incredible). Moreover, the trial court expressly considered R.P.'s "age, maturity, and mental state" and determined that she had "a very detailed recollection of the event," notwithstanding "some inconsistencies" in her account and being "mildly autistic." *See* Code § 19.2-268.3(B)(1)(b). The trial court also had the opportunity to watch and listen to Hem, Rita, and Rothe testify concerning R.P.'s statements and expressly concluded that they were credible. *See* Code § 19.2-268.3(B)(1)(c).

Although R.P. engaged in "attention-seeking" behavior at school, no evidence suggests she did so at home or in other settings. Nor did any evidence establish that she harbored any animus toward Bista before the incident. Furthermore, Hem testified that he did not "coach" R.P.'s testimony, Bista was a close family friend, and Hem had refrained from contacting police due to fear of embarrassment in the Nepali community. From that evidence, the trial court reasonably concluded that neither R.P. nor her family had a motive to "falsify or distort" the alleged offenses. Code § 19.2-268.3(B)(1)(d). The trial court also found no evidence that R.P. was "suffering pain or distress" during the disclosures. Code § 19.2-268.3(B)(1)(e). Finally, the record contained "extrinsic evidence" establishing Bista's "opportunity to commit" the assault. *See* Code § 19.2-268.3(B)(1)(f). Rita found Bista kneeling on the floor behind R.P., who was in

"dog" position and partially nude. In addition, Bista's DNA was inside of R.P.'s underpants and he admitted to Hem and Rita that he had "licked" R.P.'s "private part."

Viewing that evidence under our deferential standard of review, we cannot conclude that the trial court's findings were plainly wrong or without evidentiary support. *Park*, 74 Va. App. at 645 (quoting *McGee*, 25 Va. App. at 198). Accordingly, we hold that the trial court did not abuse its discretion by admitting R.P.'s out-of-court statements under Code § 19.2-268.3. *Id.*

### 3. Corroborative Evidence

Bista further contends that "[a]bsolutely no corroborative evidence existed" of the alleged acts of rape, sodomy, and aggravated sexual battery to satisfy Code § 19.2-268.3(B)(2)(b). He argues that the evidence established at most his mere "opportunity" to commit the crimes, which he contends is insufficient.

Code § 19.2-268.3 does not define "corroborative evidence." In general, "when a particular word in a statute is not defined therein, a court must give it its ordinary meaning." *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (en banc). "Corroboration" denotes "confirmation or support by additional evidence or authority." *Corroboration*, *Black's Law Dictionary* (11th ed. 2019). We have held that in general, "[c]orroborative evidence is such evidence as tends in some degree, of its own strength and independently, to support some essential allegation or issue." *Haas v. Commonwealth*, 74 Va. App. 586, 629 (2022) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 638 (2016)). Such evidence "tends to confirm and strengthen" a witness's testimony by "show[ing] the truth, or the probability of its truth." *Penn v. Manns*, 221 Va. 88, 93 (1980) (quoting *Brooks v. Worthington*, 206 Va. 352, 357 (1965)). Corroborative evidence need not "be sufficient to support a verdict" or remove "all doubt," but only provide "more strength than was had before." *Id.* (quoting *Brooks*, 206 Va. at 357). There is no formula for determining what constitutes adequate corroboration; and "ea[ch] case must be

decided on its own facts and circumstances." *Seaboard Citizens Nat'l Bank of Norfolk v. Revere*, 209 Va. 684, 693 (1969) (quoting *Brooks*, 206 Va. at 357). Corroborative evidence includes "independent evidence connecting the declarant with the confessed crime," such as "testimony from other witnesses" and "physical evidence." *Rankins v. Commonwealth*, 31 Va. App. 352, 362 (2000), *overruled on other grounds in Crawford v. Washington*, 541 U.S. 36, 52 (2004). In addition, we have recognized that "admissions from the defendant corroborating the challenged hearsay" are often especially compelling. *Henderson v. Commonwealth*, 59 Va. App. 641, 650 (2012), *aff'd*, 285 Va. 318 (2013).

The record contains corroborative evidence of Bista's acts relating to R.P.'s alleged rape, sodomy, and aggravated sexual battery. Forensic testing proved that Bista could not be eliminated as a contributor to a DNA mixture discovered in the interior crotch of R.P.'s underpants. Rita also testified that she observed Bista kneeling behind R.P., whose shorts were drawn below her knees. Finally, Bista confessed that he "licked" R.P.'s "private part." Collectively, that corroborative evidence satisfies Code § 19.2-268.3(B)(2)(b).[21]

C. Bista has not established that he did not have a prior opportunity to cross-examine R.P.

Bista argues that even if the statements were otherwise admissible under Code § 19.2-268.3, the trial court's admission of the forensic interview video violated the Sixth Amendment. He contends that the video contained testimonial hearsay but neither R.P. nor Bonilla was "subject to cross-examination" at trial.[22] Conceding that he had a prior opportunity

---

[21] In his brief, Bista asks this Court to conclude that there was insufficient corroborative evidence based on cases concerning *corpus delicti* necessary to corroborate a defendant's extrajudicial confession. The authorities upon which Bista relies are inapposite because they address a distinct quantum of proof: *sufficiency* to sustain a conviction, rather than *admissibility* of evidence.

[22] In their briefs, the parties do not dispute that R.P. and Bonilla were unavailable to testify at trial.

to cross-examine R.P. at the preliminary hearing, Bista maintains that various circumstances prevented his counsel from conducting a "complete cross-examination" sufficient to satisfy his right to confrontation. We disagree.

The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment bars a witness's testimonial statement against a defendant "unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). But "[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Campos*, 67 Va. App. at 703 (emphasis added) (quoting *Abney v. Commonwealth*, 51 Va. App. 337, 350 (2008)); *accord Massey v. Commonwealth*, 67 Va. App. 108, 134 (2016). Moreover, the constitutional protection applies solely to "testimonial hearsay." *Davis v. Washington*, 547 U.S. 813, 823 (2006); *accord Wimbish v. Commonwealth*, 51 Va. App. 474, 486 (2008). In determining whether a statement is testimonial, courts ask "whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of [the statement] was to 'creat[e] an out-of-court substitute for trial testimony.'" *Logan*, 299 Va. at 745 (alterations in original) (quoting *Clark*, 576 U.S. at 245).

### 1. Bonilla's Statements

The Confrontation Clause did not apply to Bonilla's statements because they were not hearsay. "Hearsay is an out-of-court statement offered for the truth of the matter asserted therein." *Davis v. Commonwealth*, 73 Va. App. 500, 507 (2021) (citing Va. R. Evid. 2:801(c)). "[I]f the value of the evidence is not tied to its credibility—*i.e.* is not offered for its truth—then

the hearsay rule does not operate to exclude it." *Id.* at 508 (citing *Winston v. Commonwealth*, 268 Va. 564, 591 (2004)). "A statement offered to provide context to an admission is not hearsay because it is not offered to prove the truth of the matter asserted therein." *Swain v. Commonwealth*, 28 Va. App. 555, 560 (1998). At trial, the Commonwealth did not offer Bonilla's statements for their truth, but solely to "provide context" for the jury to understand R.P.'s disclosures of sexual abuse. As non-hearsay, Bonilla's statements did not implicate the Confrontation Clause. *Cf. Wimbish*, 51 Va. App. at 486 (holding that the Confrontation Clause did not apply to a police officer's non-hearsay statements). Accordingly, there is no error in the trial court's admission of Bonilla's statements. *Id.*

## 2. R.P.'s Statements

Although the trial court held that R.P.'s statements during the forensic interview were testimonial hearsay, we cannot conclude that their admission deprived Bista of his right to confrontation.

Bista acknowledges that he had a prior opportunity to cross-examine R.P. at the preliminary hearing, but asserts that the examination was defective because at the time: (1) Bista "did not face a rape charge"; (2) "[n]either complete discovery nor all of [R.P.'s] school records had been disclosed"; (3) Bista was unaware of additional statements "to R.P.'s parents and her teacher" admitted at trial; (4) R.P. "purposefully" lied regarding certain facts; and (5) R.P.'s autism—"the condition that rendered her incompetent"—made her cross-examination "meaningless." Our case law compels a different conclusion.

In *Massey*, this Court rejected a similar argument. In *Massey*, the victim in a prosecution for rape and abduction died after testifying at the preliminary hearing but before trial. 67 Va. App. at 118-19. During the preliminary hearing, the victim claimed that she was unable to recall details of the incident. *Id.* at 116-18. After the preliminary hearing, the Commonwealth

indicted Massey on an additional charge of abduction with intent to defile. *Id.* at 118. The Commonwealth also disclosed phone records and photographs that contradicted the victim's preliminary hearing testimony. *Id.* Massey moved *in limine* to exclude the victim's preliminary hearing testimony from trial, arguing that admitting the preliminary hearing transcript into evidence would violate the Confrontation Clause. *Id.* He contended that he had not had a full opportunity to cross-examine the victim at the preliminary hearing because the Commonwealth indicted him on the additional charge after the hearing and disclosed phone records he could have used to impeach the victim. *Id.* Massey also argued that the victim's alleged forgetfulness had rendered her functionally "unavailable." *Id*. The trial court denied the motion. *Id.* At trial, Massey introduced numerous text messages that contradicted the victim's "memory lapses" and otherwise impeached her credibility. *Id.* at 134.

On appeal, Massey challenged the introduction of the victim's preliminary hearing testimony at trial as a violation of his right to confrontation. *Id.* at 123-24. This Court held that the additional charge was irrelevant because it arose from the same "factual basis" as the others and Massey had cross-examined the victim regarding those facts. *Id.* at 136. The phone records' untimely disclosure was also inconsequential because "[t]he fact that additional information that might have been used in the examination of a witness is discovered after the witness testifies does not render the examination infirm." *Id.* at 129. Further, by introducing the victim's contradictory text messages, Massey had impeached the victim's credibility at trial "through other means." *Id.* at 128. Accordingly, there was no violation of the Confrontation Clause. *Id.* at 134.

We find *Massey* dispositive of Bista's argument. As in *Massey*, it is immaterial that the Commonwealth indicted Bista for rape after the preliminary hearing because the new charge stemmed from the same "factual basis" and Bista rigorously cross-examined R.P. regarding those

facts. *Id.* at 136. Although Bista may have used previously-undisclosed school records or statements to conduct a more thorough cross-examination of R.P., that circumstance "[did] not render the examination infirm" because he introduced the impeaching information into evidence. *Id.* at 129. Notwithstanding R.P.'s late admission that she had lied at the preliminary hearing, Bista extensively cross-examined her specifically about her false testimony during the subsequent competency hearing and introduced that transcript into evidence. Finally, to the extent that Bista contends that R.P.'s autism rendered her *de facto* incompetent—and therefore "unavailable" during the preliminary hearing—this Court rejected Massey's analogous argument. *Id.* at 133-34. Moreover, Bista did not challenge R.P.'s competency to testify at the preliminary hearing. Indeed, he exploited R.P.'s autism to attack her credibility at trial by arguing that her mental condition made her incapable of telling the truth. "That this credibility attack did not result in an acquittal does not mean that appellant was denied his right of cross-examination." *Id.* at 134.

The dissent asserts that *Massey* is inapposite because it addresses only "whether a later-unavailable declarant's prior preliminary hearing transcript can be introduced at trial when the defendant had the opportunity to cross-examine that declarant at that preliminary hearing." According to the dissent, this case presents the "entirely different" question of "whether the general ability to cross-examine" a later-unavailable witness "at a pretrial hearing can satisfy the Confrontation Clause" if the Commonwealth did not introduce the witness's specific out-of-court testimonial statements later admitted at trial. As a matter of first impression, the dissent would hold that "out-of-court testimonial statements must be introduced by the Commonwealth at a prior hearing for a defendant to have a constitutionally adequate opportunity for cross-examination about those statements." Therefore, the dissent concludes that "Bista had no opportunity to cross-examine" R.P. about her forensic interview statements because the

Commonwealth did not introduce those statements or any testimony about them during the preliminary hearing.

The dissent's conclusions and proposed reversal are improperly based on an argument that Bista did not make. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). Thus, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). Moreover, "Rule 5A:18 applies to bar even constitutional claims." *Farnsworth*, 43 Va. App. at 500 (quoting *Ohree*, 26 Va. App. at 308).

At trial, Bista argued that he did not have a prior opportunity at the preliminary hearing to cross-examine R.P. about her forensic interview statements because five specific circumstances rendered the examination ineffective. He did not argue that the Commonwealth's failure to introduce the forensic interview statements or elicit testimony about them during the preliminary hearing deprived him of a prior opportunity to cross-examine R.P. Thus, Rule 5A:18 precludes reversing the trial court on that basis.[23]

---

[23] Acknowledging that Bista did not assert the legal argument it raises *sua sponte*, the dissent resists this conclusion by asserting that "[w]hen a party properly preserves a question of constitutional or statutory interpretation," this Court "'is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'" *Infra* p. 44 (quoting *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 773 n.11 (2014)).

In addition, the dissent strays beyond this Court's limited role by *sua sponte* crafting and advancing an appellate argument that Bista does not raise. "Simply put, '[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (alteration in original) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). To the contrary, this Court has a "duty 'not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Va. Dep't of State Police v. Elliott*, 48 Va. App. 551, 554 (2006) (quoting *Hankins v. Town of Va. Beach*, 182 Va. 642, 644 (1944)). To address a question that is unasked and not properly before this Court is to offer "an impermissible advisory opinion." *Va. Mfrs. Ass'n v. Northam*, 74 Va. App. 1, 21 (2021). Yet the dissent does exactly that by recasting Bista's narrow argument— that specific circumstances prevented his counsel from effectively cross-examining R.P. before trial—to address novel constitutional questions not properly before this Court.

In sum, Bista has not established that he did not have a prior opportunity to cross-examine R.P. before trial. Properly framed, Bista's argument presents a narrow question that *Massey* squarely addresses. Although R.P.'s cross-examination at the preliminary hearing

---

We recognize that an appellate court may raise a legal theory *sua sponte* in appropriate cases involving questions of constitutional or statutory interpretation. Nonetheless, the dissent overlooks that this is the rare exception, not the rule. As the United States Supreme Court has cogently stated, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (alterations in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)). Therefore, in general, appellate courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw*, 554 U.S. at 243. Accordingly, this Court has held that "we will not, nor should we, address issues *sua sponte* that were never argued." *Epps v. Commonwealth*, 46 Va. App. 161, 177 n.3 (2005), *aff'd on reh'g en banc*, 47 Va. App. 687 (2006), *aff'd*, 273 Va. 410 (2007). To do otherwise "would impermissibly place us in the role of advocate—far outside the boundaries of our traditional adjudicative duties." *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005).

may have been less thorough than Bista "might desire," he identifies nothing in the record that rendered the examination constitutionally infirm. *Campos*, 67 Va. App. at 703; *cf. Massey*, 67 Va. App. at 130-31 (finding no Confrontation Clause violation where defendant had prior opportunity to cross-examine victim and introduced later-discovered impeachment materials at trial); *see also California v. Green*, 399 U.S. 149, 170 (1970) (holding trial court's admission of transcript of victim's preliminary hearing testimony did not violate the Confrontation Clause despite the victim's extensive "lapse of memory"). Accordingly, because Bista offers no other basis for reversal, we affirm the trial court's admission of R.P.'s forensic interview statements.

### 3. Harmless Error

Even assuming that the trial court erred in admitting the forensic interview statements, any error was harmless beyond a reasonable doubt. "The harmless-error concept is no mere prudential, judge-made doctrine of appellate review. Harmless error is a legislative mandate." *Commonwealth v. White*, 293 Va. 411, 419 (2017); *see* Code § 8.01-678 (mandating harmless error review in all cases). "Constitutional error, like other types of error, remains subject to analysis under the doctrine of harmless error." *White*, 293 Va. at 420 (quoting *Foltz v. Commonwealth*, 284 Va. 467, 472 (2012)); *see also Crawford v. Commonwealth*, 281 Va. 84, 101 (2011) (applying harmless error review to violation of the Sixth Amendment's Confrontation Clause). "The proper inquiry for constitutional harmless error is 'whether the [factfinder] *would have* returned the same verdict absent the error.'" *White*, 293 Va. at 421-22 (alteration in original) (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006)). "[W]hether such an error is harmless in a particular case depends upon a host of factors," including the "importance of the [tainted evidence] in the prosecution's case, whether [that evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [tainted evidence] on material points . . . [and] the overall strength of the prosecution's case." *Crawford*, 281 Va. at 101 (first

through fifth alterations in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

The overall strength of the Commonwealth's case against Bista, independent of the forensic interview statements, was overwhelming. The transcript of R.P.'s preliminary hearing testimony—the admission of which is unchallenged on appeal—established that Bista had isolated her, pulled down her shorts and underpants, prevented her escape by physically forcing her into a "dog position," and licked her vagina and "butt" before penetrating both.[24] Corroborating that testimony, R.P.'s mother testified that she caught Bista essentially *en flagrante* as he knelt on the floor behind R.P., whose underpants were down, and Bista later confessed that he had "licked" R.P.'s "private part." Bista's DNA in the "interior crotch" of R.P.'s underpants, combined with the other evidence at trial, cemented his guilt.

The forensic interview statements were largely cumulative of other evidence already before the jury, including the transcript of R.P.'s preliminary hearing testimony. Although the Commonwealth relied on the forensic interview video during closing argument to emphasize consistencies among R.P.'s out-of-court statements and prior testimony, the video also contained numerous inconsistent statements that significantly diminished its corroborative value and that Bista relied on during closing argument to impeach R.P.s credibility, asserting that they contradicted her preliminary hearing testimony and were sometimes factually impossible. On balance, absent the forensic interview statements, the overall strength of the Commonwealth's case against Bista remains overwhelming. The forensic interview statements contributed little to the Commonwealth's case, and Bista leveraged their inconsistencies to his advantage. Accordingly, we find "beyond a reasonable doubt that a rational [factfinder] *would have* found

---

[24] While forcible sodomy under Code § 18.2-67.1 could include other acts, such as cunnilingus, the indictment here specified only "anal intercourse."

- 28 -

the defendant guilty absent the error." *White*, 293 Va. at 424 (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)); *cf. Crawford*, 281 Va. at 101-02 (holding trial court's admission of victim's *ex parte* affidavit violated the Confrontation Clause but was harmless beyond a reasonable doubt because the affidavit was cumulative of other evidence and overwhelming DNA and other corroborative evidence proved defendant's guilt).[25]

## II. Jury Instructions

At trial, Bista proffered two proposed jury instructions regarding witness competency. Instruction R provided: "A person is incompetent to testify if the court finds that the person does not have sufficient physical or mental capacity to testify truthfully, accurately, or understandably." Instruction S stated: "A child is competent to testify if it possesses the capacity to observe events, to recollect and communicate them, and has the ability to understand questions and to frame and make intelligent answers, with a consciousness of the duty to speak the truth."

Bista argued that the instructions were necessary because the trial court had admitted the order finding R.P. incompetent to testify at trial. He contended that if the trial court did not "tell [the jury] what incompetent means, they're left only to their imaginations" and could "draw

---

[25] Relying on the Montana Supreme Court's decision in *State v. Tome*, 495 P.3d 54 (Mont. 2021), the dissent asserts that admitting the forensic interview video was not harmless as to the sodomy charge because "[t]he specific evidence of anal penetration" was "sparse" compared to that proving aggravated sexual battery. Therefore, the dissent concludes that it is not clear beyond a reasonable doubt that the jury would have found Bista guilty of sodomy without watching the video.

*Tome* is unpersuasive. In *Tome*, the trial court admitted an unavailable child victim's hearsay statements at trial after denying Tome's specific request to depose her. *Id.* at 58. No other witnesses or physical evidence connected Tome to the crime. *Id.* at 60. The Montana Supreme Court held that admitting the statements violated the Confrontation Clause because Tome had no prior opportunity to cross-examine the victim about them. *Id.* at 67. Moreover, the error was not harmless because the statements were the sole evidence of Tome's guilt. *Id.*

By contrast, the record here establishes that Bista not only could have cross-examined R.P. at the preliminary hearing about her forensic interview statements, but DNA and other corroborative evidence implicated him as the perpetrator. Thus, *Tome* is inapposite.

- 29 -

negative inferences against" Bista. The Commonwealth responded that competency and credibility were different because credibility is a factual question for the jury; therefore, the instructions were "irrelevant" and would "confuse the jury." The trial court denied the proffered instructions. In its competency ruling, the trial court had stated that it did "not mean in any way that [the trial court] view[ed] the child's allegations against [Bista] to be untrustworthy." The trial court instead instructed the jury: "The Court's competency ruling explains [R.P.]'s unavailability at this trial. Credibility determinations as to witnesses and other evidence are determined by you."

On appeal, Bista contends that the proffered jury instructions were "vital" to his defense because the "only issue for the jury to decide" was the credibility and reliability of R.P.'s out-of-court statements. Therefore, he argues that in denying the proffered instructions, the trial court "hindered" his defense by preventing him from "being able to fully discuss with and explain to the jury what a finding of incompetence meant."

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Pena Pinedo v. Commonwealth*, 300 Va. 116, 118 (2021) (quoting *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002)). In general, "the matter of granting and refusing jury instructions rests 'in the sound discretion of the trial court.'" *Id.* at 121 (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). But we review de novo whether a proffered jury instruction "accurately states the relevant law." *Graves v. Commonwealth*, 65 Va. App. 702, 707 (2016) (quoting *Sarafin v. Commonwealth*, 288 Va. 320, 325 (2014)). "This Court's 'sole responsibility in reviewing' the trial court's decision 'is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Id.* (quoting *Cooper*, 277 Va. at 381).

"[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." *Jimenez v. Commonwealth*, 241 Va. 244, 250 (1991). But "[n]o instruction should be given . . . 'which would be confusing or misleading to the jury.'" *Graves*, 65 Va. App. at 708 (alterations in original) (quoting *Mouberry v. Commonwealth*, 39 Va. App. 576, 582 (2003)). "If the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Joseph v. Commonwealth*, 249 Va. 78, 90 (1995)).

The trial court correctly denied Bista's proffered jury instructions because they created a risk of confusing or misleading the jury and the alternative instruction fairly covered the same issues. Under Virginia law, witness credibility and competency to testify are distinct determinations, the former reserved to the fact finder and the latter to the trial court. *See Durant v. Commonwealth*, 7 Va. App. 454, 462 (1988) (holding that although a judge presiding in a jury trial determines a witness's competency to testify, "the weight to be given to the evidence and a determination of the witness's credibility are matters for the fact finder to decide"). Instructions R and S would have advised the jury that *the trial court* had already determined that R.P. was unable to discern the truth. Thus, the proffered instructions might have confused the jury by suggesting that the trial court's competency ruling was a commentary on R.P.'s credibility. By contrast, the trial court's alternative instruction "fully and fairly" covered the same issue by accurately stating the law while avoiding any such risk. *Fahringer*, 70 Va. App. at 211 (quoting *Joseph*, 249 Va. at 90). Accordingly, we hold that the trial court did not abuse its discretion in denying Bista's proffered jury instructions.

III.  Closing Argument

At a pretrial hearing, the Commonwealth moved the trial court to preclude Bista from arguing to the jury that R.P. was incredible because she had been found incompetent to testify. The Commonwealth argued that competency and credibility were distinct determinations, but conceded that the trial court's competency ruling itself was admissible to explain R.P.'s absence from trial.  Bista countered that in finding R.P. incompetent to testify, the trial court had determined "that she's not credible" because competency "is part of the credibility analysis." Thus, Bista argued that the jury was entitled to "consider that analysis."  The trial court ruled that Bista could inform the jury that R.P. was not present because the trial court had declared her incompetent but could not attack her credibility on that basis.

On appeal, Bista contends that the trial court erroneously limited his closing argument. He argues that because the trial court admitted the order ruling R.P. incompetent to testify, the trial court should have allowed him to "argue to the jury that it affected [R.P.'s] credibility." Bista also asserts that the trial court allowed the Commonwealth significant leeway to argue "about why [R.P.] was believable," while denying Bista "the same latitude."

"The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)).  The best and narrowest grounds may include a finding that an error is harmless as a matter of law.  *See* Code § 8.01-678; *see also Kirby v. Commonwealth*, 50 Va. App. 691, 699 (2007) (noting that the harmless error doctrine is a legislative mandate explicitly limiting the power of appellate courts).  Under the harmless error doctrine governing non-constitutional errors, "if there was 'a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.'"  *Shifflett*

*v. Commonwealth*, 289 Va. 10, 12 (2015) (alterations in original) (quoting Code § 8.01-678). If "the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand." *Lienau v. Commonwealth*, 69 Va. App. 254, 270 (2018) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)).

We conclude that any error in the trial court's pretrial ruling was harmless. Despite Bista's argument that the trial court erroneously restricted his closing argument because the jury was entitled to infer from R.P.'s incompetency to testify that she was incredible, the central theme of Bista's closing argument made exactly that point. Bista argued to the jury that "the Commonwealth's entire case rises and falls on whether or not you believe [R.P.]" and asserted that there was "absolutely no reason" to credit her allegations. The record shows that Bista repeatedly argued—without the Commonwealth's objection or the trial court's intervention— that the jury should disbelieve R.P. because her competency hearing testimony proved she could not distinguish between "truth" or "a lie." In addition, Bista argued that R.P.'s autism rendered her incapable of discerning the truth, asserting that autistic children "can't maintain their lie and that's exactly what we have here." Thus, although Bista complains that the trial court's rulings precluded him from arguing to the jury that R.P.'s statements were incredible because of her incompetency, the record belies that claim.

Bista's contention that the trial court allowed the Commonwealth greater latitude to argue regarding R.P.'s credibility is also meritless. A review of the trial transcripts demonstrates that Bista's closing argument comprised fifty-six pages of extensive argument devoted to challenging R.P.'s credibility, including attacks based on R.P.'s incompetency to testify.[26] Indeed, the jury's

---

[26] By comparison, the Commonwealth's closing argument comprised only twenty-one pages.

acquittal of Bista on the rape charge supports the conclusion that the jury fully considered Bista's arguments and weighed R.P.'s credibility accordingly.

In sum, Bista now complains of being deprived of the opportunity to make the very arguments he made to the jury without limitation. Accordingly, we conclude that if the trial court did err, such error "had but slight effect" and "the verdict and the judgment should stand." *Lienau*, 69 Va. App. at 270 (quoting *Clay*, 262 Va. at 260).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

Lorish, J., concurring in part, and dissenting in part.

The Confrontation Clause[27] is "[o]ne of the bedrock constitutional protections afforded to criminal defendants." *Hemphill v. New York*, 142 S. Ct. 681, 690 (2022). "Testimonial statements of witnesses absent from trial" may only be constitutionally admitted at that trial "where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Bista argued below, and on appeal, that his Confrontation Clause rights were violated when the court allowed the jury to watch a 75-minute video depicting the victim's out-of-court testimonial forensic interview without giving Bista the opportunity to cross-examine the victim about that video at trial. And he argued below, and here, that his opportunity to generally cross-examine the victim at her preliminary hearing was not sufficient.[28] I agree.

---

[27] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

[28] This question was preserved under Rule 5A:18. Prior to trial, Bista's counsel argued it would violate his Confrontation Clause rights to introduce the forensic interview at trial and argued that the opportunity to cross-examine the victim at the preliminary hearing was not constitutionally sufficient. The adequacy of this prior examination was squarely before the trial court, which specifically questioned Bista's counsel about whether she had "the statements made to [the forensic interviewer] at the time of the prelim." Bista maintained his objections at trial, after trial, and on brief here, arguing that the prior opportunity to cross-examine the victim at the preliminary hearing was insufficient because it was not "complete" and because "[t]he opportunity to cross-examine [the victim] at the preliminary hearing was insufficient to satisfy the mandates of the 6th Amendment." *Cf. Farnsworth v. Commonwealth*, 43 Va. App. 490, 501 (2004) (because the appellant "failed to make any argument concerning the Full Faith and Credit Clause before the trial court" he could not raise the constitutional question "for the first time on appeal"); *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (Rule 5A:18 precluded appellant from arguing that one offense was not lesser-included of another because the two had different statutory definitions of "law enforcement officer" when the only argument at trial was about whether one of the offenses required proof that the assailant had knowledge the victim was a law enforcement officer). Indeed, that Bista's argument centers on the adequacy of the prior opportunity to cross-examine the victim at the preliminary hearing was obvious to the Commonwealth, which suggested there was no constitutional issue "[b]ecause the victim's forensic interview was substantially similar to her testimony at the preliminary hearing, and because counsel was given an adequate opportunity to cross-examine the child victim about the allegations at the preliminary hearing." *See Wright v. Norfolk & W. Ry. Co.*, 245 Va. 160, 168

In this case of first impression, I conclude that a defendant cannot have a prior opportunity to cross-examine a witness about an out-of-court declaration at a preliminary hearing unless the Commonwealth elicited testimony about that declaration or introduced the statement into evidence at that hearing.  The majority's reliance on caselaw addressing whether and when prior cross-examination is sufficient to admit prior testimony at a preliminary hearing is inapposite because Bista does not challenge the admission of statements made at the preliminary hearing.  This case is about *out-of-court statements* made on a different occasion altogether.  Because this error was not harmless under our heightened standard for constitutional errors, I respectfully dissent from Part I.C of the majority opinion with respect to the sodomy count.

    I.  None of our prior cases hold that the general opportunity to cross-examine a declarant is equivalent to the opportunity to cross-examine that declarant *about specific prior out-of-court statements*.

The "principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused."  *Crawford*, 541 U.S. at 50.[29]  "[T]he Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to

---

(1993) (explaining a purpose of Rule 5A:18 is to give the opposing party "the opportunity to meet the objection" (quoting *Weidman v. Babcock*, 241 Va. 40, 44 (1991))); *Solomon v. Atl. Coast Line R.R. Co.*, 187 Va. 240, 243 (1948) ("There is no necessity to apply [a procedural default] rule where the character of the objection is perfectly patent.").  The majority's interpretation of Rule 5A:18 would require Bista to not only have raised the constitutional question (which he did), and argue that the preliminary hearing was not an adequate opportunity to cross-examine the victim (which he did), *but to affirmatively propose what the Commonwealth would have needed to do* to satisfy the Constitution.

[29] In prior cases, we have assumed that the confrontation rights under the Virginia Constitution are equivalent to those under the Federal Constitution.  Without consideration of the history of these particular clauses, we merely relied on the general principle that "[w]e have 'consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution.'"  *Lilly v. Commonwealth*, 50 Va. App. 173, 184 (2007) (quoting *Rowley v. Commonwealth*, 48 Va. App. 181, 187 n.2 (2006)).  Future cases might present the question of whether this assumption is supported through historical consideration and comparison of these clauses.

testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54. The only constitutionally prescribed method of confrontation is cross-examination.

This case is the first to present us with the question of whether the prior opportunity to cross-examine required by the Confrontation Clause is *statement* or *declarant* specific. Our prior cases have only considered whether a later-unavailable declarant's prior preliminary hearing transcript can be introduced at trial when the defendant had the opportunity to cross-examine that declarant at that preliminary hearing. We apply a four-part test to determine whether the Confrontation Clause is satisfied when the prosecution seeks to introduce a preliminary hearing transcript at a later trial where the witness is unavailable to testify:

> (1) that the witness is presently unavailable;
> (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient);
> (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and
> (4) that the party against whom the prior testimony is offered was present, and represented by counsel, *at the preliminary hearing* and was afforded the opportunity of cross-examination *when the witness testified at the preliminary hearing*.

*Longshore v. Commonwealth*, 260 Va. 3, 3-4 (2000) (emphases added); *Schneider v. Commonwealth*, 47 Va. App. 609, 613 (2006) (affirming the pre-*Crawford* test "complies with the new requirements of *Crawford* without alteration"). Only one of our prior cases examines whether the opportunity to cross-examine at a particular preliminary hearing was enough to satisfy the Confrontation Clause under the *Longshore* test. And the majority pegs everything on this decision, *Massey v. Commonwealth*, 67 Va. App. 108 (2016). But under the Confrontation Clause, the similarities between this case and *Massey* are meaningless in the shadow of the differences.

Here is the similarity: In both *Massey* and this case, the appellants argued that the opportunity to cross-examine a later-absent witness at a preliminary hearing was not sufficient, in part because they obtained additional information after the hearing that they could not have used in that earlier cross-examination. The differences? In *Massey*, the prior testimonial statement at issue was the transcript from the very same preliminary hearing where Massey had been present, represented by counsel, and with the opportunity to cross-examine the witness about that testimony. This case is not about whether the Confrontation Clause prevents the admission at trial of the preliminary hearing transcript where the defendant had the opportunity to cross-examine the later unavailable victim. It is about whether a pretrial hearing, where the Commonwealth did not even mention the forensic interview—let alone introduce the transcript—allowed Bista the opportunity to cross-examine the declarant about these out-of-court statements.[30]

Said another way, all of our prior cases considering the admissibility of a prior testimonial statement are limited to examining whether the defendant could have cross-examined the witness *at the time the statement was made*. *See, e.g.*, *Longshore*, 260 Va. at 4 (requiring "that the party against whom the prior testimony is offered was present, and represented by counsel, *at the preliminary hearing* and was afforded the opportunity of cross-examination *when the witness testified at the preliminary hearing*" (emphases added)). This case presents the entirely different question of whether the general ability to cross-examine a witness at a pretrial hearing can satisfy the Confrontation Clause—without any mention at the hearing of the prior out-of-court testimonial statements.

---

[30] I agree with the majority's conclusion that the forensic interview was testimonial because "the circumstances objectively indicate that there [was] no such ongoing emergency, and that the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

II. At a preliminary hearing, a defendant cannot effectively cross-examine a witness about prior statements that the Commonwealth never introduced or otherwise elicited testimony about.

There are categories of testimonial hearsay statements that by their very nature will take place outside the courtroom and outside the presence of the defendant. "Statements taken by police officers in the course of interrogations" are a prime example. *Crawford*, 541 U.S. at 52. As *Crawford* did not suggest that such statements were per se problematic under the Confrontation Clause, by implication, it is possible for such out-of-court statements to be subject to cross-examination in a manner that renders their later introduction at trial constitutional. But past cases have only found the Confrontation Clause is satisfied, in this circumstance, where the declarant is available to be cross-examined at the trial where the statements are introduced.[31]

As a matter of first impression, I would hold that out-of-court testimonial statements must be introduced by the Commonwealth at a prior hearing for a defendant to have a constitutionally adequate opportunity for cross-examination about those statements. In other words, that a declarant was generally subject to cross-examination is insufficient; she must be subject to cross-examination *concerning the out-of-court declaration*. Without this requirement, we will replicate the "principal evil at which the Confrontation Clause was directed" which was the "use of *ex parte* examinations as evidence against the accused." *Id.* at 50.

---

[31] For example, the Supreme Court affirmed the introduction of a prior affidavit at trial where the affiant testified at trial and was subject to cross-examination about the affidavit. *California v. Green*, 399 U.S. 149 (1970). *See also Marquis v. State*, 242 So. 3d 86, 90 (Miss. 2018) ("[T]he admission of the recording did not violate the Confrontation Clause of the Sixth Amendment, because Marquis had the opportunity to, and did, cross-examine J.D. at trial."); *State v. Poulor*, 932 N.W.2d 534, 538 (N.D. 2019) (affirming that introduction of complainant's video recorded statement did not violate the Confrontation Clause because the complainant was available and testified at trial).

While no other court has addressed this precise issue,[32] a leading treatise reaches the same conclusion. In *Federal Evidence*, Professors Christopher Mueller and Laird Kirkpatrick pose the scenario where an assault victim makes testimonial statements to police officers about her assault. 4 Christopher Mueller & Laird Kirkpatrick, *Federal Evidence* § 8:28 (4th ed. 2022). The victim then testifies at the preliminary hearing, "where she tells the whole story of what happened," and is subject to cross-examination, but is then unavailable at trial. *Id.* Acknowledging there would likely be no issue with introducing the transcript from that hearing, the treatise poses the separate question: what if the "prosecutor elects to call the officer to testify at trial to what the victim told him[?]" *Id.* After observing that "[w]e have not seen cases that consider this point," the treatise concludes "the right answer to this question is probably no." *Id.* While "the defense did have a chance to cross-examine the victim on what actually happened, and to test her memory, perception, and candor in describing the acts, events, and conditions in issue[,] . . . [t]he prior statement is certain to differ in some significant ways from the preliminary

---

[32] Other jurists and states have affirmed that the Confrontation Clause requires more than the general opportunity to cross-examine and that the prosecution must elicit the statements sought to be admitted at trial so that the defendant has the opportunity to cross-examine the witness about those statements. *See State v. Blue*, 717 N.W.2d 558, 566 (N.D. 2006) ("A witness's mere appearance at a preliminary hearing is not an adequate opportunity for cross-examination for purposes under the Confrontation Clause."); *In re Personal Restraint of Grasso*, 84 P.3d 859, 868 (Wash. 2004) (en banc) (finding that the admission of a child victim's hearsay statements did not violate the Confrontation Clause because the defendant "enjoyed the opportunity for full cross-examination about the alleged events *and* about [the] statements" (emphasis added)); *State v. Noah*, 162 P.3d 799, 807 (Kan. 2007) (Davis, J., concurring) ("Because I find that the requirements of unavailability and opportunity for cross-examination discussed in *Crawford* and *Davis* relate to the *statement* sought to be admitted at trial, not generally to the declarant who made that statement, I would hold that even a full cross-examination at some point previously in the proceedings would not allow a court to admit the victim's statements by way of other witness' testimony if the State did not first establish that *such statements had been subjected to cross-examination by offering into evidence the previous transcript*." (second emphasis added)); *State v. Rohrich*, 939 P.2d 697, 700-01 (Wash. 1997) (en banc) ("The opportunity to cross examine means more than affording the defendant the opportunity to hail the witness to court for examination. It requires the State *to elicit the damaging testimony* from the witness so the defendant may cross examine if he so chooses." (emphasis added)).

hearing testimony—otherwise why would a prosecutor offer it?"  Additionally, "[i]f the statement *also was not* offered at the preliminary hearing, the defense had no chance to test *the statement itself*, to probe the details that it relates, or to challenge the speaker about the statement in any way."  *Id.*  Indeed, "[w]hatever headway the defense might make in attacking the witness on her memory or accuracy in describing the events is a pale substitute for cross-examination that challenges the witness on the particular statement being offered in evidence."  *Id.*; *see also* 2 Barbara E. Bergman et al., *Wharton's Criminal Evidence* § 6:10.30 (15th ed. 2021) (explaining that "[e]ven if the prosecution puts a witness on the stand, it may not introduce his prior testimonial statements if it does not at least first ask the witness to relay the substance of the statements in court" because "[t]he Confrontation Clause 'requires the State to elicit damaging testimony from the witness so the defendant may cross examine if he so chooses'" (quoting *State v. Rohrich*, 939 P.2d 697, 701 (Wash. 1997) (en banc))).

That constitutionally sufficient cross-examination requires the Commonwealth to affirmatively introduce or elicit testimony about prior out-of-court statements is also compelled by the holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-11 (2009).  Our Supreme Court explained that case this way: "In short, the [U.S.] Supreme Court held that a defendant's rights under the Confrontation Clause cannot be 'replaced by a system in which the prosecution presents its evidence via *ex parte* affidavits and waits for the defendant to subpoena the affiants if he chooses.'"  *Cypress v. Commonwealth*, 280 Va. 305, 315-16 (2010) (quoting *Melendez-Diaz*, 557 U.S. at 324-25).  Requiring the defendant to call the adverse witness "impermissibly relieves the prosecution of its burden to present its witnesses against a defendant."  *Id.* at 316; *see also Melendez-Diaz*, 557 U.S. at 324 ("More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court.").  A contrary rule would place a similar

- 41 -

duty on a defendant to first elicit prior statements through cross-examination at a pretrial hearing, and then to cross-examine the witness on the statements the defense just elicited.

Not only would this impermissibly relieve the prosecution of its burden to elicit out-of-court statements from a witness, it also contradicts the nature of cross-examination and our precedent governing the same. "In this Commonwealth, the cross-examination of a witness is limited to matters elicited on direct examination." *Smith v. Irving*, 268 Va. 496, 501 (2004). Indeed, the majority's silence suggests a defendant must conduct cross-examination far beyond what the Commonwealth elicited on direct at every preliminary hearing to be safe. This will dramatically expand the scope of these hearings where the Commonwealth carries the burden to show, merely, that there is probable cause of the charged criminal offenses. Criminal defendants will need to conduct full cross-examination on every potential out-of-court statement at every pretrial hearing to mitigate the risk that a witness is later found unavailable to testify at trial. Not only will this be inefficient and contrary to the limited purpose of pretrial hearings, but we have also repeatedly cautioned criminal defendants against stretching out preliminary hearings and turning them into vehicles for discovery. *See, e.g.*, *Williams v. Commonwealth*, 208 Va. 724, 729 (1968) (a defendant has no "right to call witnesses at the preliminary hearing for the purpose of discovery"); *see also* 4 Mueller & Kirkpatrick, *supra* (arguing that "[e]ven if the defense knew about the statement during the prior proceeding, there is no reason to burden the defense with raising it, and legitimate tactical considerations would likely incline the defense not to do so").[33] Moreover, prosecutors who harbor doubts about a witness's competence may now be

---

[33] The implications of this rule would extend even further. If the prior statement need not be introduced, or discussed, at a preliminary hearing for a defendant to have had the opportunity to cross-examine the witness about it, a defendant who waives a preliminary hearing entirely would also have had the theoretical opportunity to cross-examine the witness.

incentivized to withhold a prior out-of-court statement from a preliminary hearing where it would be subject to cross-examination.

Here, the Commonwealth did not introduce the forensic interview at the preliminary hearing and never asked the victim any questions about the statements she made during the forensic interview. The Commonwealth correctly points out that Bista's counsel vigorously cross-examined the victim on the testimony she provided *at the preliminary hearing* about the assault. But by its very nature, a cross-examination responds to testimony and evidence put forth on direct.

At trial, the jury was presented with a 75-minute video of the victim's forensic interview where she made numerous statements inconsistent with her testimony at the later preliminary hearing and also discussed many things that were never brought up at the preliminary hearing.[34] Bista had no opportunity to cross-examine the victim about these statements at the trial (because she was found not competent to testify)[35] or at the preliminary hearing. Indeed, that the court found the victim could not understand the meaning of testifying under oath or how to distinguish truth from falsehood, just months after the preliminary hearing, casts additional doubt on whether Bista could have effectively cross-examined the victim about statements in the forensic interview *even if* the Commonwealth had introduced them at that preliminary hearing. But I need not reach that question here.

---

[34] By way of example, during the forensic interview the victim described Bista kissing her on the mouth and alleged that he put his hands on her neck so tight that she looked like she was dying. She also described him dragging her shirt "like 20 times I mean like nine or ten times" and that it caused her to keep bumping her head. Finally, she said Bista had recorded the assault with a flip phone and that her grandmother had seen the videos.

[35] As explained by the majority, the victim was eleven at the time of the assault and suffered from autism spectrum disorder which impaired her socialization, memory, and ability to learn and communicate. Her mother estimated her mental age as that of a "four to five-year-old child." At the competency hearing, the victim admitted to testifying to "false facts" at the prior preliminary hearing.

III. The majority's failure to consider these issues results in an incomplete, and inaccurate, interpretation of the Confrontation Clause.

The majority ducks this issue entirely by suggesting that I rely on an argument Bista never made. But our dispute is not really about *sua sponte* consideration of an issue not raised below. It is about the grounds that an appellate court may consider in answering a question that was clearly preserved and presented.

When a party properly preserves a question of constitutional or statutory interpretation (*see* note 28), the party's focus on particular reasons or theories underscoring why a court's ruling was in error does not preclude us from identifying and applying the proper construction of the law without relying exclusively on those exact theories. Indeed, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 773 n.11 (2014) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)); *see also, e.g.*, *Epps v. Commonwealth*, 46 Va. App. 161, 199 (2005) (Humphreys, J., concurring in part and dissenting in part) (citing *Elliott v. Commonwealth*, 267 Va. 464, 472 (2004)) (explaining that "where a party has challenged the applicability of a particular statute on appeal, appellate courts always have the authority to raise and construe the plain meaning of that statute").

To justify its path of avoidance, the majority takes cover under general doctrines underlying our adversarial system and the role parties play in presenting the issues for our review. I agree that these principles shape our role when it comes to the issues parties have preserved below and the questions parties raise on appeal.[36] But I disagree that is it the "rare

---

[36] The majority relies on cases that address the wholesale creation of new issues on appeal, not the reasoning our Court may employ in resolving an issue that was preserved. For example, the oft-quoted statement about "impermissibly plac[ing] us in the role of advocate—far outside the boundaries of our traditional adjudicative duties," described the problem with

exception" for our courts to consider distinctions not specifically articulated by the parties in addressing the issues the parties have raised.[37]

Appellate courts do not hesitate to frame an issue that was preserved, and raised, to ensure that the answer is a full and correct statement of the law. Most of the time, this draws no objection. *See, e.g.*, *Hunter v. Hunter*, 298 Va. 414, 427 (2020) (explaining in a unanimous decision that appellant's arguments "require that we reframe the ultimate question"); *The Daily Press, LLC v. Commonwealth*, ___Va. ___, _ __ (Oct. 20, 2022) (summarizing parties' arguments and "disagree[ing] with how this question has been framed" in a unanimous opinion). For example, in unanimously reversing a circuit court for dismissing a cause of action based on negligent repair, our Supreme Court relied on a distinction between nonfeasance and misfeasance—originally recognized at common law—that the appellants never argued was meaningful in any way. *Tingler v. Graystone Homes, Inc.*, 298 Va. 63 (2019). Likewise, the Supreme Court unanimously reversed a circuit court's ruling on sanctions against a landlord after

---

reversing a judgment that was supported by an alternate holding that the appellant never challenged. *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005). Without the appellant raising any challenge to an independent reason that the judgment was supported, we explained why we could not *sua sponte* "raise a challenge on Johnson's behalf to the trial court's inevitable discovery ruling, conceive of a reason to find fault with it, and then use that reason as a basis for setting aside Johnson's conviction." *Id.* Of course, the majority appropriately concedes that we may consider new issues *sua sponte* in "appropriate cases involving questions of constitutional or statutory interpretation." This could be such an appropriate case even if Bista had not raised the issue, given the question of constitutional interpretation and the liberty interests at stake. But because he did raise and preserve the issue, I do not decide this question.

[37] Again, the majority's cited cases do not square with this one. The unobjectionable statement that it is not our role to "research or construct a litigant's case or arguments for him or her" comes from a case discussing an appellant's failure to sufficiently assert the principles of law, argument, and authorities under Rule 5A:20(e). *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). Whereas in *Bartley*, the appellant offered "no legal support" from any source, merely stating that he "does not believe that it is lawful for law enforcement, during the execution of a valid search warrant, to lure third parties onto the property so they can be searched too," there is no question that Bista briefed his Confrontation Clause argument and cited to relevant legal authority.

that landlord voluntarily dismissed an appeal from general district court to the circuit court, relying on "the text of Code § 8.01-271.1 [and] our opinions applying it." *Robinson Fam., LLC v. Allen*, 295 Va. 130, 139 (2018). But the landlord never argued on appeal that the sanctions decision was inconsistent with the text of Code § 8.01-271.1; instead, the landlord argued that the lawsuit had been filed in good faith and that withdrawal of an appeal was not proof of bad faith.

Occasionally, as here, the reframing of an issue becomes *the* issue. *See, e.g.*, *Jones v. Phillips*, 299 Va. 285, 316 (2020) (Goodwyn, J. dissenting) (arguing that majority "appears to resolve this case on the basis of a Black's Law Dictionary definition of disposition that was not argued before the circuit court or this Court, and to reverse the circuit court based upon an argument that the circuit court did not have the opportunity to consider"); *Shoemaker v. Funkhouser*, 299 Va. 471, 513 (2021) (Kelsey, J. dissenting) (arguing majority relies on an argument interpreting Code § 29.1-509(C) that the appellant never made).

So when should we limit our interpretation of the issues before us to parroting only the precise words and reasoning of the parties? The answer necessarily involves the exercise of judicial discretion. Here, there is no suggestion that Bista strategically elected against arguing that there is a distinction between the opportunity to cross-examine a declarant in general and the opportunity to cross-examine the declarant about a particular out-of-court statement. Nor does consideration of this distinction compromise any principle of fundamental fairness. Instead, considering this distinction is consistent with the rule that we "exercise our duty of judicial review with great circumspection," while also "honor[ing] the axiom that '[i]it is emphatically the province and duty of the judicial department to say what the law is.'" *Howell v. McAuliffe*, 292 Va. 320, 350 (2016) (second alteration in original) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). The majority's refusal to consider the logical endpoint of Bista's properly

preserved argument results in an inaccurate and incomplete interpretation of the Confrontation Clause, at significant cost to Bista today, but also to the basic principles underlying a fair trial for all future defendants.

IV. The Confrontation Clause error was not harmless as to the sodomy charge.

Bista was convicted of two separate charges: one for aggravated sexual battery, and one for sodomy by anal penetration.[38] To assess whether a constitutional error was harmless, we ask whether "absent the [constitutional error] is it clear beyond a reasonable doubt that the [factfinder] *would have* returned a verdict of guilty?" *Commonwealth v. White*, 293 Va. 411, 421 (2017) (quoting *United States v. Hasting*, 461 U.S. 499, 510-11 (1983)). In other words, we ask "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 420-21 (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)).

Considering the evidence of aggravated sexual battery[39] in the light most favorable to the Commonwealth, there was significant other evidence of this offense—the preliminary hearing transcript where the victim testified to the assault, testimony from the victim's mother who walked into a room where she saw her daughter's shorts drawn below her knees and Bista kneeling behind her, testimony from the mother that Bista confessed he had "licked" the victim's "private part," and forensic testing which could not eliminate Bista as a contributor to non-semen DNA found in the interior crotch of the victim's underwear. Therefore, even assuming there was error in admitting the forensic interview, I concur with the majority that the error was harmless as to this count given the other evidence of aggravated sexual battery.

---

[38] While forcible sodomy under Code § 18.2-67.1 could include other acts, such as cunnilungus, the indictment here specified only "anal intercourse."

[39] Under Code § 18.2-67.3, aggravated sexual battery requires that the defendant sexually abuse the victim and, as relevant here, that the victim is under thirteen.

- 47 -

The specific evidence of anal penetration necessary to support the sodomy conviction, however, was comparatively sparse. In its briefing on appeal, the Commonwealth points only to the victim's testimony at the preliminary hearing and her forensic interview as evidence of the sodomy. The first time the victim alleged anal penetration was during the forensic interview.[40] She then testified to the same during the preliminary hearing. And her parents testified at trial that the victim told them at some point that Bista "put it on the front and tried to put it on the back." I cannot say it is clear *beyond a reasonable doubt* that the jury would have still returned a verdict of guilty without watching the 75-minute video of the victim speaking to the forensic interviewer.[41] And so I dissent from this conclusion in Part I.C of the majority opinion.

CONCLUSION

That a child would be sexually assaulted is every parent's worst nightmare. That it was a family friend—known to the child as "grandpa"—who committed the assault, is unimaginable. But in the face of bad facts, we should resist the temptation to make bad law. For the reasons set forth above, I would affirm Bista's conviction for aggravated sexual battery, for which he is sentenced to serve 20 years of incarceration. But I would reverse Bista's conviction for forcible

---

[40] During the hearing on whether to permit the victim's statements under Code § 19.2-268.3, the victim's mother initially testified that the victim immediately disclosed to her "that he took his private part in my front and back both sides. He entered it." But the mother later clarified that the daughter only immediately alleged vaginal penetration. When both parents were interviewed by law enforcement, neither said, at that time, that the victim had disclosed anal penetration.

[41] The Supreme Court of Montana recently held that the admission of a forensic interview at trial violated the defendant's Confrontation Clause rights because the defendant had no opportunity to cross-examine the witness about the statements in the interview and concluded that introduction of the video was not harmless. *State v. Tome*, 495 P.3d 54 (Mont. 2021). "The jury heard from [the victim's] own lips how Tome had abused her, they saw her gestures, they observed her demeanor, and the video was a powerful presentation of the State's complaining witness—a witness who was out-of-reach and unavailable for cross-examination," and therefore, the introduction of this out-of-court statement was not harmless. *Id.* at 67.

sodomy, for which he received the mandatory minimum sentence of life imprisonment, and remand for a new trial, because the Confrontation Clause requires more.